WORLD INSURANCE COMPANY *v.* BETHEA

No. 40403 March 18, 1957 93 So. 2d 624

*Hannah, Simrall & Aultman,* Hattiesburg, for appellant.

*C. W. Sullivan, J. C. Bell,* Hattiesburg, for appellee.

Holmes, J.

This suit was brought by Dr. Guy D. Bethea against World Insurance Company in the County Court of Forrest County. The plaintiff sought to recover certain hospital benefits and certain benefits for disability due to sickness under a health and accident insurance policy theretofore issued to him by the defendant. The plaintiff alleged that he became totally disabled due to sickness on or about December 9, 1953, and so continued, and that the defendant had become indebted to him for the benefits thereafter accruing under the terms and provisions of the policy but had failed and refused to pay the same. The plaintiff sued for hospital benefits alleged to have accrued in the sum of $743.16 from the date he became totally disabled to the date of filing suit, a

period of approximately seven months, and for benefits for disability due to sickness in the amount of $2100 alleged to have accrued at the rate of $300 per month for the same period, and demanded judgment of the defendant for the total sum of $2843.16.

The defendant, by appropriate answer, denied liability and averred as an affirmative defense that the insured had failed to disclose in his application for the insurance certain information which was material to the risk, and had made false answers to questions propounded in the application which materially affected the risk to be assumed, and that the policy was therefore void. The defendant particularly averred in its answer that the insured in his application made the following false representations which were material to the risk to be assumed by the defendant: (1) That no life, accident or health insurance issued to him had ever been cancelled or renewal refused; (2) that he had never made claim for injury or sickness; (3) that he was at the time of making said aplication for insurance sound physically and mentally to the best of his knowledge and information; (4) that he had never had heart disease or diabetes; (5) that he had not received medical or surgical advice or treatment, or had any local or constitutional disease within the past five years. The defendant tendered with its answer the premiums theretofore paid on the policy in the sum of $856.80, which tender the plaintiff refused.

The plaintiff responded to the defendant's affirmative defense and denied any concealment of material information in his application or that he had made false answers to the questions therein propounded, and averred that the application for the insurance was prepared by an agent of the defendant who wrote the answers appearing therein and that the plaintiff made full disclosure of all matters with reference to which inquiry

was made in the application and made truthful answers to the questions therein propounded, fully disclosing to the agent truthful answers to all questions therein propounded, but that the agent had failed to correctly write in the application the answers which had been given by the plaintiff.

The evidence was directed to the issues thus raised by the pleadings and on the submission to the jury of these issues, the jury returned a verdict for the plaintiff for the full amount sued for and judgment was entered accordingly. The defendant appealed to the circuit court. Pending the appeal to the circuit court, the plaintiff died and the cause was revived in the name of Mrs. Guy D. Bethea, administratrix of the plaintiff's estate. The circuit court affirmed the judgment of the county court, and the defendant appeals to this Court.

The circumstances surrounding the issuance of the policy and culminating in this suit appear without dispute in the record. William Cole, an agent of the defendant, solicited the insurance here involved and prepared the application therefor and wrote in the answers to the questions therein propounded and transmitted the application to the defendant. The application was dated November 30, 1950, and the plaintiff signed it without reading it. Thereafter, in consideration of the first annual premium of $190.20, which the plaintiff paid, and annual renewal premiums of $170.20 each, the defendant, on January 5, 1951, issued to the plaintiff the policy sued on. The policy provided certain hospital benefits and also benefits for total disability due to sickness in the amount of $200 per month. Later, for an additional premium, the monthly benefits for disability due to sickness were increased to $300 per month. The plaintiff became totally disabled due to sickness on or about December 9, 1953, and made demand upon the defendant for the benefits provided in the policy. The de-

fendant denied liability upon the grounds hereinbefore stated, and this suit followed.

The paramount question involved is whether the defendant is relieved of liability on the policy upon the ground that the insured failed to disclose in his application information material to the risk to be assumed and gave false answers to questions propounded in the application which materially affected the risk to be assumed. The solution of this question involves a consideration of the evidence.

■■ ■ The proof shows without dispute that William Cole solicited the insurance on behalf of the defendant and prepared the application therefor and transmitted the same to the defendant, and it is not controverted, and cannot be successfully controverted, that in so doing he is held to be the general agent of the defendant under Section 5706 of the Mississippi Code of 1942, which provides that every person who solicits insurance on behalf of any insurance company or who takes or transmits, other than for himself, an application for insurance "shall be held to be the agent of the company for which the act is done or the risk is taken as to all the duties and liabilities imposed by law, whatever conditions or stipulations may be contained in the policy or contract." Cole's knowledge and information acquired in taking the application was, therefore, the knowledge and information of the defendant. The plaintiff testified that he was engaged in the practice of Dentistry in the City of Hattiesburg; that the agent came to his office and solicited the insurance and prepared the application; that the agent read to him the questions in the application and that he gave truthful answers thereto; that the answers appearing in the application were written therein by the agent but were not the true answers given by the plaintiff; that he made full disclosure to the agent of his past medical history and past condition of health

and past dealings with other insurance companies; that he told the agent that he had previously made a claim for sickness for gall bladder trouble under a policy of insurance which he had with the Interocean Insurance Company, and that the company paid the claim and then cancelled the policy; that he truthfully told the agent that he had never previously had heart trouble or diabetes, and explained to the agent that when he was hospitalized for gall bladder trouble in 1949 the doctors at first thought he had heart trouble but later determined that it was gall bladder trouble; that he truthfully told the agent at the time of making the application for insurance that he was sound physically and mentally to the best of his knowledge and information; that he told the agent that during the preceding five years he had medical advice or treatment from Dr. W. R. Bethea, Dr. S. E. Bethea, Dr. L. T. Carl and Dr. R. H. Clark, who has since died. The plaintiff further testified that in connection with his claim against the Interocean Insurance Company he gave to Dr. Clark a blank form to be filled out and signed and that he never thereafter saw the blank form and did not know how the same had been filled out by Dr. Clark. The foregoing testimony of the plaintiff is not contradicted.

Dr. S. E. Bethea testified that the plaintiff became totally disabled in December 1953 due to diabetes and a nervous condition with degeneration of the brain, and that he was still totally disabled at the time of the trial. He testified further that he had treated the plaintiff in 1947 and that he and Dr. Clark had treated the plaintiff in 1949 when the plaintiff was hospitalized due to gall bladder trouble. He further said that it was at first thought that the plaintiff had heart trouble, that is, a coronary occlusion, but that it proved to be gall bladder trouble. He identified the hospital records which were offered in evidence and which showed that dur-

ing the period of the plaintiff's hospitalization in 1949, his attending physicians were Dr. S. E. Bethea and Dr. R. H. Clark, and that he was being treated for gall bladder trouble. This witness further testified that in 1947 Dr. Carl examined the plaintiff and electrocardiagrams and x-rays were made, and that they disclosed neither diabetes nor heart trouble. He said that the electrocardiagrams showed some suggestive changes in one lead but that such condition might show in anyone, and that the plaintiff did not have heart trouble. He also testified that an examination of the plaintiff for blood sugar was made and that this showed normal. He said that he was unable to account for the fact that Dr. Clark had written in the proof of claim to the Interocean Insurance Company a diagnosis of coronary occlusion, since he and Dr. Clark had both agreed that the plaintiff's trouble was gall bladder trouble.

Mrs. Polly Welch testified that on November 30, 1950, she was employed by the plaintiff in his dental office and that she recalled a man coming to the office on or about November 30, 1950 and representing himself to be an insurance man and discussing insurance with the plaintiff, but that she did not recall the man's name. She said that at that time she had been working for the plaintiff about six months. She later testified that she began working for the plaintiff on or about December 14, 1949. She at first testified that the name of the insurance company purported to be represented by the agent was the Great Western Life Insurance Company. Later she said, however, that she was uncertain and confused as to the name of the insurance company. She testified that she heard the man discussing insurance with the plaintiff and that the man sat down at her desk in the office and asked questions of the plaintiff and prepared the application and wrote in such answers as appeared therein. She recalled hearing the agent ask

the plaintiff if he had had a physical in the last five years, to which the plaintiff replied in the affirmative, and she recalled hearing the plaintiff tell the agent that he had had some trouble "a while back" and that he was accused of having a heart attack but that it ended up being his gall bladder. She recalled also hearing the plaintiff tell the agent about a policy of insurance which he had had with another company and that the company had paid a claim which he presented but had cancelled the policy. She also testified that she heard the plaintiff tell the agent that he had a physical ever so often and that he had Dr. W. R. Bethea in Jackson to examine him occasionally, and also consulted Dr. Ernest Bethea and Dr. Carl.

The defendant offered proof of the form signed by Dr. Clark dated in June 1949 and showing a diagnosis of a coronary occlusion. The defendant also offered proof of the fact that the plaintiff, prior to the application here involved, had a policy with the Interocean Insurance Company and collected a claim thereunder, and that such policy was thereafter cancelled. The defendant further offered testimony to the effect that the answers in the application were material to the risk and that if it had known or been informed that the answers were not true it would not have issued the policy.

■■ ■ The issue as to whether or not the plaintiff in making the application had concealed information material to the risk, or failed to make a full disclosure of matters and facts material to the risk, or failed to truthfully and correctly answer the questions propounded in the application was submitted for the determination of the jury under proper instructions. The jury determined this issue adversely to the defendant, and we are of the opinion that the jury was amply warranted under the evidence in so doing.

■■ ■ The appellant contends, however, that parol evidence to contradict the answers written in the ap-

plication was inadmissible as varying the terms of a written contract, and that, therefore, the court erred in overruling the motion of the defendant to exclude this evidence and to direct a verdict for the defendant. We do not think that this contention of the defendant is well-founded. This Court has settled the proposition that if the agent of an insurance company undertakes the preparation of an application for insurance in his company, and by a mistake or omission fails to write down correctly the applicant's answers to the questions propounded, his company will be bound by such answers just as if they had been written down in the language used by the applicant and presented thus to the company for its action. In the early case of Planters Insurance Co. v. Myers, 55 Miss. 479, this Court, in dealing with this same proposition, said:

"There are two lines of decisions in the books, which pursue divergent lines. The one holds that parol testimony is inadmissible to show the participation of the agent in the preparation of the application—as, that correct responses were made to the interrogatories, but, on the suggestion of the agent, an incorrect result of such responses was written down by the agent, or the applicant at his dictation. These decisions rest on the idea that the object and effect of the testimony is to vary or contradict the written contract. Such were the earlier cases in New York and many other states. . .
. . . The other class, of later origin, rapidly increasing in numbers and favor, declares that insurance companies constituting local agents to canvass for business, take and forward applications, collect premiums, and give binding contracts of insurance for fifteen days pending applications (such agents as Wilson), must be held responsible for the acts and declarations of the agents, within the scope of the employment, as if they proceeded from the principal."

The Court further said: "We adopt the doctrine of those cases which hold that, if the agent takes charge of the preparation of the application, or suggests or advises what shall be answered, or what will be a sufficient answer, the company shall not avoid the policy because they are false or untrue, if full disclosures were made by the applicant to him."

Like conclusions were reached by the Court in Fidelity and Casualty Company of New York v. Cross, 131 Miss. 632, 95 So. 631, Home Insurance Company of New York v. Thornhill, 165 Miss. 787, 144 So. 861, and the more recent case of Calvert Fire Insurance Company v. Swain, 79 So. 2d 537.

Much is said in the argument by the appellant with reference to negligence on the part of the applicant in not reading the application. On this point, the Court, in Home Insurance Company of New York v. Thornhill, supra, quoted with approval the following: ". . . █ the insured is not chargeable with such negligence as will render him liable for false answers inserted by the agent merely because he signed the application in blank and trusted to the agent to fill it out, or because he signed an application filled out by the agent without reading it."

Appellant relies upon the cases of Fidelity Mutual Life Insurance Company v. Mrs. Emma S. Miazza, 93 Miss. 18, 46 So. 817, and Fire and Marine Insurance Company v. Nix, 162 Miss. 669, 138 So. 598. These cases involve misrepresentations made by the applicant to the insurance company and are readily distinguishable under the facts and are not applicable to the case before us.

 █ In view of the facts of the case before us and the settled decisions of this Court, we are of the opinion that the court was correct in overruling the motion of the defendant to exclude the evidence and direct a verdict for the defendant.

It is further contended by the defendant that the court erred in not sustaining its motion to exclude the testimony of Mrs. Welch. This motion was based upon the grounds that Mrs. Welch had testified that the insurance company involved was the Great Western Life Insurance Company, and had also testified that she started to work for the plaintiff in December 1949 and that it was about six months thereafter when the application for insurance was prepared in the plaintiff's office. Mrs. Welch later testified that she was somewhat confused as to the name of the insurance company. She also testified that she recalled hearing the agent ask the plaintiff if he had had a physical in the last five years and that the plaintiff answered in the affirmative and told the agent that he had had some trouble "a while back" and he was accused of having a heart attack but that it ended up as gall bladder trouble.

She also testified that she heard the plaintiff tell the agent that he had a policy with another company and had presented a claim to that company and the company had paid him but had cancelled the policy. She testified further that she heard the plaintiff tell the agent that he had a physical ever so often and that he had Dr. W. R. Bethea in Jackson to examine him occasionally, and also consulted and was examined and treated by Dr. Ernest Bethea and Dr. Carl. We do not think that the discrepancies in Mrs. Welch's testimony with reference to the name of the insurance company involved, or with reference to accuracy in fixing the period of time that elapsed between the beginning of her employment by the plaintiff and the taking of the application are such as to render her testimony inadmissible. We are of the opinion that such discrepancies as may have existed in her testimony went to the weight of the evidence and were for the consideration of the jury.

We are accordingly of the opinion that the judgment of the court below should be and it is affirmed.

Affirmed.

*Roberds, P. J.,* and *Lee, Arrington* and *Ethridge,* JJ., concur.