186 So.2d 485 (1966)
Claude L. KIRKLAND et ux., Complainant-Appellant,
v.
PRUDENCE MUTUAL CASUALTY COMPANY, Defendant-Appellee.
No. 43994.
Supreme Court of Mississippi.
May 16, 1966.
Laurel G. Weir, Philadelphia, for appellant.
*486 Robert H. Weaver, Watkins, Pyle, Edwards & Ludlam, Jackson, for appellee.
GILLESPIE, Presiding Justice.
Claude L. Kirkland, complainant below and whose administratrix is appellant here, filed his bill of complaint in chancery court against Prudence Mutual Casualty Company, defendant below and appellee here, to enjoin appellee from cancelling a health and accident insurance policy, and to recover benefits claimed to be due under the policy. The appellee answered and averred that it cancelled the policy and forwarded Kirkland a check for the premium he had paid on the ground that Kirkland had misrepresented certain material facts in his application for the policy, and that the policy was issued in reliance upon such false representations. Kirkland did not cash the check. The chancery court dismissed the original bill of complaint, sustained appellee's cross-bill, and cancelled the policy. Claude L. Kirkland appealed to this Court, and upon his death, the appeal was revived in the name of his administratrix. We refer to the appellee as the Insurance Company and to Claude L. Kirkland as Kirkland.
The principal question is whether Kirkland made false representations of material facts concerning his income that were relied upon by the Insurance Company in issuing the policy. We hold that Kirkland did not make such false representations, and that the Insurance Company wrongfully cancelled the policy after Kirkland became disabled.
In its answer and cross-bill, the Insurance Company averred that Kirkland made material false representations on the application for the policy in that he answered certain questions as follows:
"6. Do your average monthly earnings from the above stated occupation exceed the total single monthly indemnity under all contracts which you now have or for which you have applied?
Yes.
What is your take home pay per month? $350.00."
There is very little conflict in the evidence. J.C. Mitchell, a general agent of the Insurance Company, went to Kirkland's home to sell Kirkland a health and accident policy. The evidence concerning the representations made by Kirkland consists of the testimony of Kirkland and Mitchell. Kirkland's version follows: Mitchell knew that Kirkland was a carpenter engaged at that time in working on his own house, and that the roof was off the house and lumber was in the living room where Mitchell sat while filling in the application. Mitchell filled in the answers to the questions, and Kirkland, who could barely read, signed the application without reading it. They discussed Kirkland's income, and Mitchell knew that because Kirkland was working on his own home, he had no income at that time. The application was dated January 20, 1964. Kirkland told Mitchell his income was about $3,000 for 1962, and about $1,500 in 1963. Mitchell asked Kirkland what his income was a month, and Kirkland replied that he could not tell him because he did not work all the time, but he made $80 or $90 per week if he worked.
Mitchell's version of the conversation at the time the application was signed follows: Mitchell asked the questions and filled in the answers to the questions in the application form. He made the general statement that Kirkland gave him the information used in filling in the application. Kirkland told him that his earnings were $85 or $90 per week, and Mitchell figured in his head that that would amount to above $350 per month, and then Mitchell put in the application the figure, $350, as the take home pay of Kirkland. Mitchell could not recall if Kirkland told him how much Kirkland's income was in 1962 and *487 1963. He went over the application with Kirkland, and Kirkland agreed on the answers. He knew that Kirkland was working on his own house and had no income at the time the application was filled in; that Kirkland was between jobs; and that Kirkland did not work all the time.
The chancellor did not find that Kirkland made any false representations to Mitchell at the time the application was filled in by Mitchell. He did find that Kirkland had not given full and complete information on the question concerning Kirkland's take home pay; however, the chancellor decided the case for the Insurance Company on a legal question. The Insurance Company relies solely on the contention that Kirkland misrepresented a material fact upon which the Company relied in issuing the policy. We construe the chancellor's finding to mean that he found a failure of Kirkland to give full and complete information about his income, but not that Kirkland made any misrepresentation. When the evidence is considered in the light most favorable to the Insurance Company, it shows that there was no misrepresentation of a material fact by Kirkland, and that he did make full disclosure of the facts concerning his income. The incorrect answers placed in the application by Mitchell were not placed therein because of what Kirkland told Mitchell, but the answers to the two questions concerning income were made by Mitchell, the general agent of the Insurance Company, on his own responsibility. Kirkland testified that he told Mitchell what his income was for the years of 1962 and 1963, and Mitchell did not deny it. There is no dispute that Kirkland made about $3,000 in 1962 and about $1,500 in 1963. There is no dispute that Kirkland had no income for January 1964 because he was working for himself, and Mitchell admitted he knew this was true. There is no dispute that Kirkland told Mitchell he made $80 to $90 per week when he worked, and Mitchell admitted this to be true. These are all the basic facts concerning Kirkland's income; they are all true, and Kirkland made full disclosure to Mitchell of these facts. Mitchell placed in the application the answers to the two questions involved in this case on his own responsibility.
This case is controlled by the rule as stated in a number of our cases, including Jefferson Life & Casualty Co. v. Johnson, 238 Miss. 878, 120 So.2d 160 (1960), wherein this Court stated:
The rule is well established in this State that where the agent of an insurance company undertakes the preparation of an application for insurance, and by mistake or omission, fails to correctly write down the answers to questions propounded to the applicant, the company will be bound by the knowledge acquired by the agent just as if the agent had correctly written the answers in the application. Calvert Fire Insurance Co. v. Swain, 224 Miss. 85, 79 So.2d 537; Home Insurance Co. of New York v. Thornhill, 165 Miss. 787, 144 So. 861; World Insurance Co. v. Bethea, 230 Miss. 765, 93 So.2d 624. The same rule applies where the agent who undertakes the preparation of the application fills in incorrect answers without asking the applicant the questions. The basis of the rule is that the insurer is estopped from pleading the provisions of the policy which provide that it should be void if the questions are not correctly answered in the application; or, as it is otherwise said, the insurance company waives the right to rely on a violation of the terms of the policy. * * * (238 Miss. at 883, 120 So.2d at 162.)
The chancellor held as a matter of law that assuming full disclosure was made by Kirkland to Mitchell concerning the question of income, waiver and estoppel cannot be relied upon by Kirkland under the rule laid down in Hartford Accident & Indemnity Co. v. Lockard, 239 Miss. 644, 124 So.2d 849 (1960) and other cases cited by the chancellor in his opinion. The cases *488 upon which the chancellor based his decision hold that waiver or estoppel cannot create a contract of insurance or so apply as to bring within the coverage of the policy property, loss, or risk, which by the terms of the policy is expressly excepted or otherwise excluded. This rule was also followed in Employers Fire Insurance Co. v. Speed, 242 Miss. 341, 133 So.2d 627 (1961). We are of the opinion that this rule of law does not apply to the present case. Apparently, appellee shares this view because it does not mention this rule in its brief.
We are therefore of the opinion that the chancellor erred in cancelling the policy, and the decree is reversed and judgment is entered here adjudicating that the policy in question was in full force and effect on September 9, 1964, when Kirkland became totally disabled. The case is remanded for the purpose of computing the disability benefits from the date of Kirkland's disability to the date of the trial in the chancery court as provided in the policy, plus interest from the due date of each payment.
Reversed and remanded.
JONES, BRADY, PATTERSON, and INZER, JJ., concur.