# Randall G. DUERINGER, Plaintiff Appellee,

v.

# GENERAL AMERICAN LIFE INSURANCE COMPANY, Defendant Appellant.

## No. 86–4929.

United States Court of Appeals, Fifth Circuit.

Aug. 10, 1988.

Whitman B. Johnson, Steen, Reynolds, Dalehite & Currie, Jackson, Miss., for defendant appellant.

Richard C. Roberts, III, James W. Nobles, Jr., Jackson, Miss., for plaintiff appellee.

## ON PETITION FOR REHEARING

Before THORNBERRY, POLITZ and JOLLY, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

Randall Dueringer petitions this court for rehearing of *Dueringer v. General American Life Insurance Company*, 842 F.2d 127 (5th Cir.1988). We upheld Dueringer's jury award of $5,852.18 in actual damages but denied $360,000 in punitive damages awarded by the jury for bad faith denial of an insurance claim.

Dueringer strenuously objects to our reversal of his punitive damages award. He contends that this court has usurped the role of the jury in contravention of *Boeing v. Shipman*, 411 F.2d 365, 374 (5th Cir. 1979). He asserts that this court cannot reweigh the evidence of punitive damages or substitute its judgment for that of the jury. In addition he contends that the present case is replete with the same kind of evidence cited by the Mississippi Supreme Court in *Bankers Life & Casualty Co. v. Crenshaw*, as proof of bad faith, 483 So.2d 254 (Miss.1985). In particular, Dueringer argues that General American conducted an inadequate investigation and gave an improper and illegal excuse for denying Dueringer's claim.

■ Although Dueringer's arguments are made with force and fervor, we find them resistible. First, we acknowledge that the *Boeing v. Shipman* standard of review is applicable to the issue of punitive damages in this case since our court has held that we apply federal procedural law in determining whether a motion for directed verdict should be granted on this question. *Tutor v. Ranger Ins. Co.*, 804 F.2d 1395, 1398 (5th Cir.1986).[1]

*Boeing* provides:

On motions for directed verdict and for judgment notwithstanding the verdict the Court should consider all of the evidence—not just that evidence which supports the non-mover's case—but in the light and with all reasonable inferences most favorable to the party opposed to the motion. If the facts and inferences point so strongly and overwhelmingly in favor of one party that the Court be-

---

1. *But see, Reserve Life Ins. Co. v. McGee*, 444 So.2d 803, 809 (Miss.1983) ("at the conclusion of the evidence, the trial court ... should determine whether ..., *as a question of law,* the insurer had a legitimate or arguable reason to deny payment of the claim." (emphasis added)); *Life & Casualty Ins. Co. v. Bristow*, 529 So.2d 620, 623 (1988, Miss.) (questions whether punitive damages should be submitted to the jury "are questions of law to be decided by the trial judge"). Because one panel cannot reverse another panel in any event, and because it is immaterial in the outcome of this case, we will avoid wrestling with questions of what is procedural and what is substantive.

lieves that reasonable men could not arrive at a contrary verdict, granting of the motions is proper.

411 F.2d. at 374–75. Application of federal procedural law does not allow us to ignore Mississippi substantive law, however. Rather, we follow the accepted rule that absent a federal constitutional or statutory question, a federal court sitting in diversity should employ the substantive law of the applicable state. *Erie R. Co. v. Tompkins,* 304 U.S. 64, 78, 58 S.Ct. 817, 822, 82 L.Ed. 1188 (1938). Thus, while we use the *Boeing* standard to review the evidence, we must look at Mississippi law "to determine the type of evidence ..." that should be considered. *Tutor v. Ranger Ins. Co.,* 804 F.2d at 1398. In applying Mississippi law, we note that the Mississippi Supreme Court has said time and again that "it is the function and responsibility of the trial court to determine whether the insurance carrier had a reasonably arguable basis, either in fact or in law, to deny the claim." *Bankers Life & Cas. Co. v. Crenshaw,* 483 So.2d at 269 (quoting *Blue Cross and Blue Shield of Miss. v. Campbell,* 466 So.2d 833, 842 (Miss.1984)); *Pioneer Life v. Moss,* 513 So.2d 927 (Miss.1987). *See also Life & Casualty Ins. Co. v. Bristow,* 529 So.2d 620 (1988, Miss.). Therefore, we direct our inquiry to the question whether, under the *Boeing* standard, General American had a reasonably arguable basis for denying Dueringer's insurance claim.

Dueringer contends that in addressing punitive damages we ignored the case of *Bankers Life,* 483 So.2d 254. He asserts: "[M]embers of this panel cannot read *Bankers Life & Cas. Co. v. Crenshaw,* and conclude that the case at bar was rightly decided. The record in this case is replete with the same kind of evidence recited by the Mississippi Supreme Court in *Bankers Life* as proof of bad faith under Mississippi law." (Citations omitted). Dueringer maintains that, like *Bankers Life,* General American obtained little information regarding the claim, did not interview Dueringer or obtain his medical records, and presented a different reason at trial for denying his claim. *See Bankers Life,* 483 So.2d at 270–73. Dueringer contends that we disregarded his evidence of bad faith, including, inter alia: (1) no investigation was conducted before his first denial; (2) the investigation consisted of two written requests made to Dueringer's former employer and his physician; (3) General American did not solicit any information from Dueringer; (4) General American ignored Dueringer's offer to supply additional information;[2] and (5) General American gave one reason for denial of benefits initially, and another reason at trial.[3] Dueringer thus contends that this evidence constitutes bad faith and the district court properly submitted the issue of punitive damages to the jury.[4]

Although Dueringer intensely argues the similarities between his case and *Bankers Life, Bankers Life* must be read objectively as a whole and in context with its precedents. These Mississippi cases have emphasized that each case is fact specific. *See, e.g., Blue Cross & Blue Shield of Miss. v. Campbell,* 466 So.2d 833 (Miss. 1984); *Reserve Life Ins. Co. v. McGee,* 444 So.2d 803 (Miss.1983). As *Bankers Life* and its precedents reiterate, it is the responsibility of the trial court in each case to determine whether the issue of bad faith should be submitted to the jury. *Life & Casualty Ins. Co. v. Bristow,* 529 So.2d

---

**2.** This contention refers to the fact that Dueringer's attorney stated in a letter that if General American required additional information concerning the claim, Dueringer would supply it upon request; however, Dueringer neither offered General American any specific evidence nor made any contention pointing to a disability that would make him eligible for policy coverage.

**3.** General American's final denial letter stated that Dueringer did not qualify for extended medical benefits because Dueringer was not "to-

tally disabled." The policy stated simply that coverage will be provided where the individual is "disabled." General American argued at trial that the terms are synonymous.

**4.** In addressing Dueringer's contentions, we credit all the evidence in Dueringer's favor that the investigation was not a perfect investigation and that in some instances it was even mishandled. As our opinion makes clear, however, we think the investigation was adequate in the context of the case.

620 (1988, Miss.); *Bankers Life*, 483 So.2d at 269. This determination is made by addressing whether there is a "reasonably arguable basis, either in fact or in law, to deny the claim." *Id.* (citations omitted).[5] In answering this question,[6] the court in *Bankers Life* conducted a fact-specific inquiry into the handling of the claim, the reason given for denying the claim, and the reason given during trial. After reviewing the evidence, the court held that the insurer had acted in bad faith in denying the insurance claim. *Id.* at 271.

■ In reviewing whether there was a jury question in this case, we similarly examined the evidence to determine if a reasonably arguable basis existed for General American's denial of the claim when it finally did so on September 11, 1984. The evidence showed that in May 1984 General American contacted Richardson, Dueringer's former employer, and Dr. Nix, Dueringer's attending physician at the time of the accident. Richardson informed the company that its records did not indicate that Dueringer was "totally disabled." Dr.

Nix responded that Dueringer was probably able to return to work by June 23, 1983. Dueringer did not supply any contrary or additional information to the company. "It is well settled that an insurance company is entitled to rely upon information from an insured's doctor in making its decisions about benefits." *Bristow*, 529 So.2d 623–24 (1988, Miss.). The information before General American thus clearly indicated that Dueringer was not disabled.[7] The company then informed Dueringer in writing that because their investigation showed that he had terminated his insurance policy upon termination of his employment, the only possible avenue of coverage was the extended medical benefits provision. With respect to this provision, the company wrote, he was not covered because he was not "totally disabled." *General American enclosed a copy of the policy's provisions, and a copy of the definition of "disabled."* The term "disabled" was defined as "unable to perform regular work." Neither Dueringer nor his lawyer contested whether he was disabled within the meaning of

---

5. Mississippi Supreme Court cases have recognized that in certain instances, especially where the predicate facts upon which the insurer bases its decision to deny coverage are disputed, a court must submit the issue of punitive damages to the jury, even though the insurer asserted a reasonably arguable basis for the denial. *See, e.g., Aetna Casualty & Surety Co. v. Day*, 487 So.2d 830, 834 & n. 2 (Miss.1986).

6. Although *Bankers Life* poses several somewhat redundant questions that could be explored in submitting a case to the jury, our reading of that case convinces us that their essence may be reduced to the single *Boeing* question: whether a reasonable juror could conclude that the insurer did not have a reasonably arguable basis, either in fact or in law, to deny the claim.

We recognize that in *Life Ins. Co. of Mississippi v. Allen*, 518 So.2d 1189, 1193 (Miss.1987), the Mississippi Supreme Court said that the trial court proceeds "as in any other case where objection is made to submission to the jury of an issue of fact. The reviewing court must look at the elements of the punitive damages claim ... and decide whether, under the totality of the circumstances and viewing the insurer's conduct in the aggregate, a reasonable, hypothetical trier of fact could have found that either malice or gross neglect/reckless disregard had been established." In the light of the facts presented in *Allen*, we do not interpret that statement as a departure from the "reasonably arguable basis"

test, since the focus in *Allen* was on the fact that the insurer had no arguable basis to deny the claims.

Furthermore, only a few months earlier, the court reiterated in *Pioneer Life v. Moss*, 513 So.2d 927, 930 (Miss.1987), that if an insurance company has a legitimate or arguable reason for denying a claim, then such will utterly *preclude* the submission of the issue of punitive damages to the jury. (Emphasis in the original.)

Finally, the court, sitting en banc in *Life & Casualty Ins. Co. v. Bristow*, 529 So.2d 622 (1988, Miss.) has made pellucid that the "arguable reason" test survives: if the insurer has a legitimate or arguable reason for denying the claim, the question of punitive damages does not go to the jury. *Bristow* (citing and reaffirming *Blue Cross/Blue Shield v. Campbell*, 466 So.2d 833, 842 (Miss.1984), and *Reserve Life Ins. Co. v. McGee*, 444 So.2d 803, 809 (Miss. 1983)).

7. Indeed, the record shows that he did return to work, including his former work of digging swimming pools. At trial, Dueringer disputed whether he was able to return to his *regular* work, which included pool construction work and sales. He claimed his facial disfigurement and his continuing knee problem hindered him in his regular work to the extent that he was disabled within the meaning of the policy. He had not presented this evidence to General American when it denied his claim.

the policy, but instead filed suit. On the basis of the evidence before General American at the time it finally denied the claim, it is certain to us that, when construed in the most favorable light to Dueringer, no reasonable juror could have concluded that General American did not have a *reasonably arguable* basis for denying the claim.[8]

■ Nevertheless, Dueringer contends that General American acted in bad faith because it investigated and denied his claim under an erroneous standard. He notes that the extended medical benefits provision does not contain the term "totally disabled," but only requires the insured to be disabled, i.e., unable to perform *regular* work. Thus Dueringer asks how there can be a reasonably arguable basis to deny the claim when the denial was based upon an erroneous premise, i.e., a requirement that he be *totally* disabled. We answer this question by determining whether there was evidence of *bad faith* on the part of General American when it asserted that he was not totally disabled and denied his claim. *See Bankers Life*, 483 So.2d at 269. No evidence suggests that General American deliberately or intentionally applied a stricter policy term than was required under the contract. No evidence indicates that the use of the term "totally disabled" by General American was anything more than negligence.[9] More serious and egregious conduct than this sort of negligence is required to establish an independent tort against the insured, *State Farm Fire & Casualty Co. v. Simpson*, 477 So.2d 242, 248 (Miss.1985). The evidence here simply does not show that General American's applying the erroneous standard of "totally disabled" was conduct that can be described as gross or callous or wanton or accompanied by fraud or deceit. *See Simpson*, 477 So.2d at 250. As earlier noted, General American specifically provided Dueringer with a copy of the extended medical benefits provision and a copy of the definition of "disabled." Consequently, both Dueringer and his lawyer were apprised of the reason for General American's denial of his claim. We can only conclude that under these circumstances General American's use of the term "totally disabled" cannot be classified as "bad-faith."

For these reasons, the petition for rehearing is DENIED.

---

**8.** Dueringer argues perfervidly that we ignored his evidence of improper investigation. As our opinion emphasizes, the central, determinative question is whether the insurer had a reasonably arguable basis to deny the claim, and an improper investigation is relevant only to the extent that it sheds light on the resolution of this question. Here, the investigation adequately and, without bad-faith motive or conduct, produced a reasonably arguable basis to deny the claim. Moreover, although Dueringer argues for a more complete investigation, there simply was no bad-faith breach of any duty to the insured who passively accepted the fact finding of the insurer's investigation. In short, the evidence relating to the insurer's investigation demonstrated an absence of any facts that General American conducted its investigation in *bad faith*, and, under *Boeing v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969) (en banc), we believe that "reasonable men could not arrive at a contrary verdict...."

**9.** General American, as we have earlier noted, contended "total disabled" is an interchangeable term for "inability to perform regular work." We assume, in a light most favorable to Dueringer, that the terms are not interchangeable.