**Thomas R. GUY, Administrator of the Estate of Vicki R. Guy, deceased, Plaintiff–Appellee,**

v.

**COMMONWEALTH LIFE INSURANCE COMPANY, Defendant–Appellant.**

No. 88–4918.

United States Court of Appeals, Fifth Circuit.

Jan. 31, 1990.

Rehearing Denied Feb. 28, 1990.

Pauline Shuler Lewis, W.O. Luckett, and Michael T. Lewis, Clarksdale, Miss., for defendant-appellant.

Michael B. McMahan, Marcia C. McMahan, Hattiesburg, Miss., and Ballard & Lynchard, Hernando, Miss., for plaintiff-appellee.

Before GEE and JONES, Circuit Judges and HUNTER,[1] District Judge.

EDITH H. JONES, Circuit Judge:

Commonwealth Life Insurance Company failed to pay Vicki Guy's medical expenses in connection with her gall bladder removal. After a non-jury trial, the district court entered judgment for $2,614.00 in compensatory damages and $141,000 in punitive damages for Commonwealth's "bad faith refusal" to pay Guy's claim. The material issues on appeal are whether Commonwealth could rescind Guy's medical policy *ab initio* for a material misrepresentation on the policy application, and whether the bad faith refusal to pay the claim is sup-

---

1. District Judge of the Western District of Loui-   siana, sitting by designation.

ported in the evidence.[2]  We affirm the award of compensatory damages only.

## I.

## FACTS

On October 8, 1984, Commonwealth's insurance agent Tim Walton contacted Vicki Guy at the beauty shop she owned for the purpose of selling a medical insurance policy.  She had never before applied for either medical or life insurance, but she had known Walton all of his life and had shopped around for a favorable policy.  In her deposition, Guy testified, and the district court found, that Walton, during the taking of her application, asked her only about her address, social security number, date of birth, and nothing else.  According to Guy, Walton filled out the remainder of Commonwealth's application without asking her another question.  Guy signed the application after Walton prepared it, but she said she never read it.

Two questions on the application are pertinent to this case.  First, no information was provided by Walton in response to the inquiry whether the applicant had consulted or been treated or examined by any physician or practitioner within the past five years.  In response to another query, however, the application was marked that Guy had *not* sought treatment for or had any known indications of a gall bladder problem within the last ten years.  The court found that no one from Commonwealth asked Guy whether she had been treated for a gall bladder problem, as Walton's testimony on this issue was inspecific.

The policy was issued by Commonwealth after a later telephone conversation with Guy to clear up some questions regarding her health.[3]  Seven months later, Guy visit-ed her doctor for severe pain, and within three days she submitted to surgery to remove her gall bladder.  The hospital notes indicate a diagnosis of chronic cholecystitis (inflammation of the gall bladder), cholelithiasis (gall stones), and acute cholecystitis.  Commonwealth's policy would have covered $2,614.00 of the bills related to this surgery.

Commonwealth began to investigate the claim, on the suspicion that her gall bladder condition might have pre-existed issuance of the policy.  Over the next few months, Commonwealth agents developed the following information.  In April, 1981, Vicki Guy visited Dr. Henry Wadsworth, Sr. for pain in the right upper quadrant of her abdomen.  Dr. Wadsworth made a clinical diagnosis of cholecystitis, prescribed pain medication, and put her on a gall bladder diet.  Although Dr. Wadsworth, Sr. died in 1983, his son carried on the practice and advised Commonwealth that the diagnosis was not confirmed by x-rays or cholecystogram.

Guy's surgeon submitted a claim and wrote a letter to Commonwealth stating that the pathology report indicated chronic cholecystitis and that the operative report indicated acute cholecystitis.

Commonwealth claims examiners obtained the opinions of both a registered nurse and a doctor on the company's staff, who agreed that Guy's gall bladder condition was treated in April 1981.

On September 16, 1985, the claims examiner sent a letter to Guy denying coverage on her claim because of the pre-existing gall bladder condition.  This was an erroneous basis for denial, inasmuch as the policy defined pre-existing conditions as those for which treatment had been received within

---

**2.**  Ms. Guy died after suit was filed but before trial occurred.  Her husband, as administrator, pursued the claim.  The parties have not briefed for appeal the question whether a punitive damage award like the one in this case survives the plaintiff's death.  The trial court ruled against Commonwealth on this point, as a matter of Mississippi law.

**3.**  The trial court held that Commonwealth's failure to attach the telephone questionnaire to Guy's copy of the policy meant that Guy was not bound by any statements contained therein.  *See* Miss.Code Ann. § 83–9–11(1).  This ruling is disputed by Commonwealth only to the extent that Commonwealth charges the trial court excluded offer of the questionnaire by the defense and not by the plaintiff.  We do not rely on the questionnaire for any purpose and accordingly do not reach the issue.

two years before the date of the issuance of the policy. Over three years had elapsed between Guy's treatment by Dr. Wadsworth, Sr. and the issuance of the Commonwealth policy. The September 16 letter offered Guy an opportunity to respond to the denial.

Less than a month later, on October 10, Commonwealth formally rescinded Guy's policy based on another provision. The letter explaining Commonwealth's rescission rested upon Guy's alleged misrepresentation in the policy application that she had not been treated for a gall bladder condition within the preceding ten years. The letter stated that Commonwealth would not have issued such a policy in the face of this information, and the letter was intended to accompany a check refunding Guy's premiums. The court found that the refund check reached Guy, but that she never received the October 10 letter. Her agent Walton likewise did not see the rescission letter. Vicki Guy received a check for $555.21, representing the refunded premiums, on November 16, 1985. Guy took the check to her lawyer and eventually filed suit.

## II.

## RESCISSION OF THE POLICY

■ Commonwealth vigorously contends that Guy was bound by the agent's erroneous statement about her prior lack of gall bladder treatment, as represented in her insurance application, and that it therefore had the right to rescind the policy based on this material misrepresentation. Miss.Code Ann. § 83–9–11 (1972). Mississippi, however, has a venerable rule that

> where the agent of an insurance company undertakes the preparation of an application for insurance, and by mistake or omission, fails to correctly write down the answers to questions propounded to the applicant, the company will be bound by the knowledge acquired by the agent just as if the agent had correctly written

the answers in the application. (citations omitted)

> The same rule applies where the agent who undertakes the preparation of the application fills in incorrect answers without asking the applicant the questions....

*Kirkland v. Prudence Mutual Casualty Company,* 186 So.2d 485, 487 (Miss.1966) (citing *Jefferson Life & Casualty Co. v. Johnson,* 238 Miss. 878, 120 So.2d 160, 162 (1960)). *See also World Insurance Co. v. Bethea,* 230 Miss. 765, 93 So.2d 624, 628 (1957); *Home Insurance Co. of New York v. Thornhill,* 165 Miss. 787, 144 So. 861 (1932). Walton's decision to fill out Vicki Guy's insurance application seems to place Commonwealth squarely within this rule.

It is true that in some of these cases, the insurance company was held to be bound by acts of its agents [4] who, although they received correct information from the prospective policyholder, nevertheless filled out the applications incorrectly. *See e.g., Kirkland,* 186 So.2d at 487; *National Life & Accident Ins. Co. v. Miller,* 484 So.2d 329, 334 (Miss.1985). Commonwealth accordingly contends that this case is different, because there is no evidence that Walton ever possessed accurate information about Guy's medical history. She did not disclose it to him. It seems to us dispositive, however, that the court believed Guy's deposition testimony that she was not asked about any of the pertinent medical history data on the application form. Moreover, Guy did not adopt the omissions and misstatements of Walton as her own, because she testified that she did not read the insurance application before or after signing it. In such a case, Mississippi law places upon the insurer the burden of error in an insurance application, if its agent has undertaken the responsibility of preparing the application.

Commonwealth's attempt to rely upon *Reserve Life Insurance Co. v. Brunson,* 252 Miss. 20, 172 So.2d 571 (1965), is unavailing. The principal concern of that case is the materiality of the misrepresentation

---

**4.** In Mississippi, an insurance agent is held to be the agent of the company when he is soliciting sales of policies. Miss.Code Ann. § 83–17–1 (1972).

to the insurance company, rather than the allocation of the responsibility for omissions between the company's agent and the policy applicant. The Mississippi Supreme Court stated that the omissions made by the insurance agent "became a part of [the plaintiff's] applications when she gained knowledge of them by inspection at the time the policies were accepted by her." *Brunson*, 172 So.2d at 573. Whereas the claimant in *Brunson* inspected the insurance applications attached to the policies and knew them to be erroneous, Guy did not inspect her policy application.

Although Commonwealth is evidently dissatisfied with Mississippi's decision to place the risk of receiving erroneous information from policy applicants upon the insurer, where its agent prepares their forms, we are confident that Mississippi law so holds in this case.

### III.

### BAD FAITH REFUSAL TO PAY MEDICAL CLAIM

■ Mississippi recognizes an action for tortious breach of an insurance contract, for which punitive damages can be awarded if the insurer acted with malice or with gross negligence or reckless disregard for the rights of others. *Aetna Cas. & Surety Co. v. Day*, 487 So.2d 830, 832 (Miss.1986). The insurer will not be subject to punitive damages, however, if it had a legitimate or arguable reason for failing to pay a claim. *Standard Life Ins. Co. v. Veal*, 354 So.2d 239, 248 (Miss.1977). "An arguable reason is one in support of which there is some credible evidence. There may well be evidence to the contrary. A person is said to have an arguable reason for acting if there is some credible evidence that supports the conclusions on the basis of which he acts." *Blue Cross & Blue Shield of Mississippi v. Campbell*, 466 So.2d 833, 851 (Miss.1984) (Robertson, J., concurring in denial of rehearing).

■ Our court has twice held that we review the trial courts' decision on this threshold standard under the rule of *Boeing Co. v. Shipman*, 411 F.2d 365, 374 (5th Cir.1969). We look at Mississippi law, however, "to determine the type of evidence" that should be considered. *Dueringer v. General American Life Ins. Co.*, 853 F.2d 283, 285 (5th Cir.1988) (on rehearing), quoting *Tutor v. Ranger Ins. Co.*, 804 F.2d 1395, 1398 (5th Cir.1986). As *Dueringer* observes, Mississippi's Supreme Court has allocated to the trial court the responsibility to determine whether the insurance carrier had a reasonably arguable basis to deny the claim. *Dueringer*, 853 F.2d at 285, citing cases. Applying these principles of review, we conclude that the trial court erred in finding that Commonwealth lacked an arguable reason to deny Guy's claim. We also conclude, pursuant to *Boeing*, that insufficient evidence supports the trial court's finding that Commonwealth acted in reckless disregard of Guy's rights.

The court rested on three facts that allegedly proved Commonwealth lacked an arguable reason to deny coverage on the ground of material misrepresentation in the policy application: (1) Commonwealth made an unwarranted "assumption" that an "unanswered question" on Guy's insurance application was falsely answered by her. (2) The company relied on "an inadmissible and internally contradictory" telephone questionnaire.[5] (3) The court also rejected Commonwealth's preexisting condition defense on the basis of what it described as a single entry in the treating physician's records.[6] Even accepting the court's decision to exclude the report from the telephone questionnaire, the other two fact findings misperceive the evidence and its significance.

In referring to Commonwealth's reliance on an "unanswered question," the court focused solely upon the inquiry on the insurance application concerning Guy's visits

---

5. *See* note 3, supra.

6. Although the pre-existing condition defense was patently meritless because the policy required Guy to have been treated for it within

two years before the policy issued, the court's error on the factual support for the duration of the gall bladder condition also applies to the company's misrepresentation defense.

to the doctor within the last five years. Guy's application did not respond to this particular question, but the policy was issued anyway. Whether the insurance company would have an arguable basis to rescind a policy for an unanswered question on an application is debatable, but it is not the critical question. The court entirely overlooked that the application clearly answered "No" to the question whether Guy had been treated for or had any known indication of a gall bladder disorder [7] within the past ten years. The materiality of this answer is not contested: Commonwealth's witness testified that if the company had known of the condition, it would have refused to issue a medical policy to Guy or would have excluded gall bladder coverage or substantially increased her premium. Thus, the record establishes an apparent material misrepresentation on the policy application.

It is no response to the court's error to urge, as does Guy, that Commonwealth was obliged to interview the agent before determining whether to rescind. Walton testified that to his best recollection, he had followed standard procedure by asking Guy each question before he penned the responses on the application. Walton's information would have reinforced Commonwealth's decision to rescind.

The court's rejection of the evidence of a previous gall bladder problem is also deficient, unless it is understood as no more than a finding concerning the two-year pre-existing condition clause of the policy. As we have noted, that provision was erroneously invoked by Commonwealth in the first instance. The court stated that a "single entry" in the surgeon's records constitutes the evidence for a pre-existing condition within the policy exclusion. However, Guy's hospital records, obtained by Commonwealth, explicitly tie the removal of her gall bladder to chronic gall bladder inflammation and gallstones as well as an acute condition. An ultrasound scan revealed the presence of numerous gallstones, some quite large and thus likely in existence for some time. Guy's physician Dr. Brooks acknowledged a pathology report of chronic cholecystitis in addition to Guy's acute inflammatory condition. Contrary to the court's specific finding, Commonwealth pursued the origin of the gallstones to records from Guy's previous doctor, Dr. Wadsworth, Sr., who diagnosed cholecystitis in April, 1981. Dr. Wadsworth's son, who apparently assumed his father's practice, confirmed this diagnosis for Commonwealth, although he observed that it had not been verified by x-ray or other demonstrative tests. In sum, the evidence that Guy experienced a gall bladder condition for which she was treated three years before obtaining her medical policy is at least sufficient to establish an arguable basis for Commonwealth's rescission.

After the company had investigated the existence of the prior condition and compared that condition with the insurance application, the defense of material misrepresentation provided an arguable basis for denying coverage by rescinding the policy. The Mississippi Supreme Court has emphasized that if the insurer has a legitimate or arguable reason for denying the claim, there is no basis for punitive damages. *Life & Casualty Ins. Co. v. Bristow*, 529 So.2d 620 (Miss.1988).

Not only was there an arguable basis to deny coverage, but we also conclude that the trial court erred in its implicit finding that Commonwealth acted recklessly and in wanton disregard of Guy's rights.[8] The trial court adequately described the principles governing the imposition of punitive damages in Mississippi bad faith refusal cases, but the facts on which it relied do not justify that result. Further, the court utterly failed to take into account the facts

---

7. "HAVE ANY OF THE PROPOSED INSUREDS:
   B. In the last 10 years been treated for, or had any known indications of:

   .    .    .    .    .

5. Jaundice, ulcer or hernia; disorder of the stomach, intestines, rectum, liver, gall bladder, pancreas or spleen?"

8. The court did not recite this finding in *haec verba.*

that, in our view, clearly militate against a punitive damage award.

As the court recognized, the mere fact that an investigation of a claim is deficient or incompetent is not sufficient to establish malice, gross negligence or reckless disregard of the rights of the insured. *See Fedders Corp. v. Boatright*, 493 So.2d 301, 312 (Miss.1986); *Bellefonte Ins. Co. v. Griffin*, 358 So.2d 387, 391 (Miss.1978). This is true even where clerical mistakes result in a negligent denial of a claim. *Consolidated American Life Insurance Co. v. Toche*, 410 So.2d 1303, 1306 (Miss. 1982). Under Mississippi law, an insurance company must promptly and adequately investigate an insured's claim before denying it. *Life & Casualty Ins. Co. v. Bristow*, 529 So.2d 620, 623 (Miss.1988). The standards for prompt and adequate investigation have been evolving over the last decade, but they include for present purposes a duty to make reasonable efforts to obtain all available medical information relevant to the claim. *Life Ins. Co. of Mississippi v. Allen*, 518 So.2d 1189–93 (Miss.1987). A mere delay in investigating a claim will not support an award of punitive damages; any delay must be so unreasonable as to constitute an independent tort or amount to a constructive denial of the claim, made without an arguable reason and in bad faith. *See Aetna Casualty & Surety Co. v. Day*, 487 So.2d 830, 833 (Miss.1986). *See also Eichenseer v. Reserve Life Ins. Co.*, 881 F.2d 1355, 1361–62 (5th Cir.1989) (two and one-half year delay in settling claim, combined with alleged lack of arguable basis to deny, justified punitive damage award); *but see* opinion dissenting from denial of rehearing en banc, 894 F.2d 1414, (1990).

Again the court relied on three facts in determining that Commonwealth's handling of Vicki Guy's claim was reckless or grossly negligent. First, the court stated that Commonwealth made no attempt to interview agent Walton "even though the application was obviously incomplete." 698 F.Supp. at 1315. Commonwealth wrongfully "assumed" that Guy had made false answers on those questions which were left unanswered. Third, the only reason "communicated to Guy" for the denial of the claim was that of "pre-existing condition."

The first fact, as we have shown, does not advance the court's reasoning, because an interview with Walton would not have dispelled the company's belief that Guy had supplied false information for the application. As to the second "fact," even if Commonwealth erroneously assumed that Guy falsely answered questions left unanswered on the application, it must be remembered that the application contained a negative answer to the question regarding prior gall bladder treatments. *See supra* note 7.

The third fact related by the trial court, that Guy was notified only of a denial of her claim on the basis of a "pre-existing condition," is supported by the record, but it does not prove reckless or grossly negligent conduct by Commonwealth. This fact may imply to the trial court that Commonwealth manufactured the defense of policy misrepresentation after it already determined not to pay Guy's claim, *see Bankers Life & Casualty Co. v. Crenshaw*, 483 So.2d 254, 273 (Miss.1985), *aff'd*, 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988); or that Commonwealth was relying on a patently unjustifiable policy provision for denying the claim. Further analysis of the facts refutes these implications.

Although Guy and Walton claimed never to have seen the Commonwealth letter that was intended to accompany the premium refund check, that letter explicitly referred to the false answer to the gall bladder inquiry as a basis of material misrepresentation. That letter was prepared on October 10, 1985, less than a month after the initial letter denying coverage on the basis of "pre-existing condition." The court nowhere suggests that Commonwealth deliberately intended to conceal from Guy the reason for rescission, nor does it suggest that, somehow, the letter was not intended to reach Guy. The fact that Guy did not receive the October 10 letter indicates negligence rather than any kind of malevolence on the part of Commonwealth.

Additionally, the October 10 letter clearly supports Commonwealth's reliance on material misrepresentation at the conclusion of its investigation of Guy's claim. The company did not "manufacture" this defense after suit had been filed. *Cf. Bankers Life & Casualty Co. v. Crenshaw,* 483 So.2d at 273. It erroneously referred to the pre-existing condition clause of the policy in mid-September, but after further investigation, and considerable internal communications among Commonwealth employees, the company settled upon a material misrepresentation basis for rescission.

Although Commonwealth was negligent in relying upon an inapplicable (although not statutorily invalid[9]) policy provision, and in failing to insure that Guy received a copy of the October 10 letter, it is difficult to fault the company's handling of this claim otherwise. Commonwealth's claims agent obtained all pertinent records from Guy's hospitalization, and she tracked down, as far as possible, the basis for Dr. Wadsworth, Sr.'s original diagnosis. She consulted with numerous Commonwealth employees, including a registered nurse and a doctor on the company's staff. Contrary to Guy's suggestion, no Mississippi case has yet said that it is impermissible for an insurance company, in seeking medical advice concerning a claim, to rely upon in-house medical staff. No Mississippi case has stated that the insurance company must "interview" all of the claimant's physicians before deciding to deny coverage. Rather, the cases refer to a need for the company to obtain "all available medical information relevant" to the claim. *See Crenshaw,* 483 So.2d at 272; *see also Allen,* 518 So.2d at 1193.[10] Finally, Commonwealth investigated the claim promptly and made its decision within less than six months after Guy's operation. There is thus no basis for asserting egregious delay.

Although the claims handling process used by Commonwealth fell short of perfection, it served its essential goal of affording adequate investigation of Guy's claim. The evidence simply does not support the trial court's implicit finding that Commonwealth was reckless or grossly negligent and that punitive damages should be awarded.

For the foregoing reasons, the judgment of the trial court is affirmed in regard to Guy's actual damages and reversed insofar as it awards punitive damages.

AFFIRMED in part, REVERSED in part.

---

9. *See Employers Mutual Casualty Co. v. Tompkins,* 490 So.2d 897, 906–07 (Miss.1986) (punitive damages may be awarded if, among other things, insurance company relies upon a provision that has been held invalid and unenforceable by a state or federal court in order to deny coverage).

10. The court was justifiably annoyed by Commonwealth's reliance on the erroneous policy defense of pre-existing condition from the date of filing its first answer in federal court until the parties signed a pre-trial order. We, too, are mystified by the company's persistence in asserting this defense. Fed.R.Civ.P. 11 is designed to deter the filing of frivolous defenses, and the amount of any sanction imposed under Rule 11 would surely have been adequate to address this problem.