**Jacob PONGETTI, Bankruptcy Trustee, Plaintiff,**

v.

**FIRST CONTINENTAL LIFE AND ACCIDENT COMPANY, Defendant.**

**No. EC87–188–S–D.**

United States District Court, N.D. Mississippi, E.D.

June 30, 1988.

Jacob Pongetti, Bankruptcy Trustee, Columbus, Miss., W. Howard Gunn, Aberdeen, Miss., for plaintiff.

John L. Low, IV, Watkins & Eager, Jackson, Miss., for defendant.

## OPINION

SENTER, Chief Judge.

This is another in the seemingly unending line of suits before this court against insurance companies for bad faith refusal to pay a claim which involves the dual defenses of material misrepresentation on the application and preexisting condition.

Having duly considered the evidence presented by the parties during a bench trial together with argument of counsel, the court makes its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

## FACTS

On July 9, 1985, Mike and Lois Kennedy applied for an insurance policy which was designed to pay their home mortgage payments in the event that either of them became disabled for any period of time in excess of one month and to pay off their mortgage in the event either died. The application form was actually completed by John Earhart, a soliciting agent for First Continental Life and Accident Insurance Company. This is in keeping with the practice in the industry and with the training which Earhart received. The policy was issued on August 20, 1985. The application form requires the applicant to provide information on all causes for which a physician has been consulted in the last five years. The plaintiff's application reflects only one visit to a physician, Dr. Chauvin, for a checkup during this period. It is undisputed that Mrs. Kennedy had actually seen at least two other doctors on several occasions. She had been treated by Dr. Holman, of Amory, a gynecologist, for "female trouble" beginning in March of 1985. She had also been treated by Dr. McDonald, a neurosurgeon, for back problems which had led to her hospitalization in January of 1985. The factual dispute revolves around whether Mrs. Kennedy told Earhart about these problems and her treatment by these physicians. Mrs. Kennedy says that she told Earhart about her medical history and that he responded by telling her that so long as the company kept her check and did not direct her to get a physical, she would be covered. Earhart, of course, denies that he was told anything about Mrs. Kennedy's previous medical problems. He also denies that he told Mrs. Kennedy that she would be covered for disabilities arising from these preexisting conditions. For reasons stated herein, the court need not resolve the factual dispute.

The policy states that it covers any total disability caused by injury or sickness which is contracted or first manifests itself while the policy is in force.

In early September, 1985, less than one month after the policy became effective, Mrs. Kennedy again consulted Dr. Holman, complaining of pain in the pelvic region. Dr. Holman admitted her to the hospital and performed a hysterectomy on September 10, 1985. The plaintiff was unable to work from September 10 through October 30, 1985. She filed a claim with First Continental seeking disability payments for this period. The proof of disability form showed on its face that she had been treated for this same condition on March 15, 1985, some five months before the effective date of the policy. First Continental's claims department notified Mrs. Kennedy by letter dated November 5, 1985, that her claim was denied because the sickness

which led to the disability had started before the policy date.

In August, 1986, the plaintiff hurt her back while on vacation in Gatlinburg, Tennessee. Upon returning to Mississippi, she sought medical treatment from Dr. McDonald in Tupelo, Mississippi. She was hospitalized from August 27 to September 4, 1986, for a series of tests, including a bone scan, myelogram, and CT Scan. She was again hospitalized from October 20 to October 24, 1986, during which time surgery was performed to correct a disc bulge. Mrs. Kennedy was unable to work from August 24, 1986, and filed a claim on or about November 14, 1986, which listed the termination date of the disability as undetermined. This claim was not immediately denied because the proof of disability form left unclear exactly when the back problem had first arisen. First Continental's claims people requested further medical records concerning the claim from the plaintiff's doctors and notified the plaintiff that this was the reason for delay by letter dated November 25, 1986. After receiving and reviewing the medical records, the company's claims personnel determined that this condition had also existed at the time the policy was issued and notified Mrs. Kennedy that coverage was denied on that basis by letter dated December 30, 1986.

Mr. and Mrs. Kennedy had purchased this policy as protection against default on their mortgage payments in the event either of them became disabled. The medical bills incurred in connection with three hospital stays and two surgical operations, coupled with Mrs. Kennedy's inability to work and subsequent loss of income, left the Kennedys in terrible financial condition. They eventually were forced to file a bankruptcy petition under Chapter 7 of Title 11 in order to save their home. Mrs. Kennedy suffered some emotional upset as a result of these financial problems.

Mrs. Kennedy filed this lawsuit in the Circuit Court of Monroe County, Mississippi, seeking compensatory and punitive damages. First Continental promptly removed to this court. Upon motion by Mrs. Kennedy, the Honorable Jacob Pongetti, bankruptcy trustee, was substituted as the real party in interest.

## LAW

■ First Continental raises two different theories in defense of its refusal to pay these claims. The first of these is material misrepresentation. Under Mississippi law, a misrepresentation on the application for an insurance policy, if it is material to the risk assumed, makes the contract voidable at the instance of the insurer. *Fidelity Mutual Life Insurance Co. v. Miazza,* 93 Miss. 18, 46 So. 817 (1908). This is so even if the applicant believes the statement to be true. *Id.* However, where the insurer gives correct information to the company's agent who, in turn, fills out the application, leaving out or altering certain information, there has been no misrepresentation. *World Insurance Co. v. Bethea,* 230 Miss. 765, 93 So.2d 624 (1957). The fact that the applicant signs the application without reading it does not bar her from attempting to prove that the answers contained therein do not accurately reflect the information she gave to the agent. *Home Insurance Company of New York v. Thornhill,* 165 Miss. 787, 144 So. 861 (1932). The interplay of these two rules—that a material misstatement of fact by the applicant makes the policy voidable, but the company is bound by the information given to its agent regardless of what he writes in the application—leads to the sort of swearing match the court is asked to resolve as finder of fact in this nonjury case. The applicant swears that full disclosure was made and the agent swears that he was never told the information that would have made the applicant an unacceptable risk. Neither is a disinterested witness. The plaintiff has filed a claim, the denial of which is legitimate if she misrepresented her medical history. Because the agent is paid on a commission basis—here 55% of the premiums paid—there is always a motive for him to fail to report to the company information which would cause the company to refuse to issue the policy. An admission at trial that he had acted on that motive would certainly cost the agent his job.

However, as stated earlier, the court need not decide this factual dispute in this case. The company has raised a second reason why its failure to pay should be excused in this case—the preexisting condition or first manifest provision of the policy specifically excludes from coverage the disabilities for which Mrs. Kennedy filed these two claims. It is well established in Mississippi law that clauses in disability and hospitalization policies excluding or limiting liability for sickness or injury that arises before a certain time are valid. *Mutual of Omaha Insurance Co. v. Walley*, 251 Miss. 780, 171 So.2d 358 (1965). In the case at bar, there was no serious contention by Mrs. Kennedy that these conditions did not exist at the time the policy became effective. Mrs. Kennedy did testify that her back injury occurred when she "stepped wrong" while at a shopping center. However, the doctor's report clearly shows that this was not a new injury, but was a continuation of the back problems Mrs. Kennedy had begun complaining of in January, 1985.

It is the plaintiff's contention that the knowledge of the agent, imputed to his principal, bars the company from denying coverage in this case. In support of this contention, the court's attention is directed to *Southern United Life Insurance Co. v. Caves*, 481 So.2d 764 (Miss.1985), and *National Life and Accident Insurance Co. v. Miller*, 484 So.2d 329 (Miss.1985). Neither of these cases supports the plaintiff's proposition under the facts of this case. Both of these cases involve life insurance policies which the companies issued while the agent possessed knowledge on which the company would have based a refusal to issue a policy. In *Caves*, the court was confronted with a situation where the agent knew that the applicant had a serious heart condition at the time the application for credit life insurance was completed. The policy provided that as a condition precedent, the insured had to be in insurable health at the time the policy was issued. When Mr. Caves died, Southern United rejected his claim because he had not met the condition. The court held that the agent's knowledge of this preexisting condition was imputed to her principal and

that the "condition of insurability was effectively waived." *Caves*, 481 So.2d at 767.

In *Miller*, while taking an application for life insurance which was to cover the Miller's son, the agents were told by Mrs. Miller that the son had been treated and hospitalized for a heart murmur. The agent filling out the application checked "no" as the response to questions concerning treatment of the proposed insured for heart disease and consultation of a doctor or hospital confinement in the past five years. When the child died as a result of this heart condition, the company refused to pay the Miller's claim, basing its denial on the alleged material misrepresentation. The court held that "National cannot avoid the policy because the application for insurance did not fully disclose information given to its agents." *Miller*, 484 So.2d at 334. This is clearly nothing more than a reapplication of the rule from *World Insurance Co. v. Bethea*, discussed above, that the company cannot rely on a defense of misrepresentation when the applicant told the truth. Equally as clearly, *Miller* says nothing about the preexisting condition defense raised in this case.

The plaintiff's argument is basically one of waiver or estoppel—that the company is estopped to deny coverage because of the representation of its agent or that the company has waived the contrary provisions of the policy by accepting the premiums with knowledge that the insured was in violation of the provision. It is a long-settled rule of law in Mississippi that the doctrines of waiver and estoppel may not operate to create coverage or expand existing coverage to risks expressly excluded. *Mississippi Hospital & Medical Service v. Lumpkin*, 229 So.2d 573, 576 (Miss.1969). This rule has not been abrogated by the court in its *Caves* opinion. That case represents an application of the counterpart to the rule just stated: that a forfeiture provision may be waived. *Morris v. American Fidelity Fire Insurance Co.*, 253 Miss. 297, 173 So.2d 618 (1965). In the seminal case on this point, the Mississippi Supreme Court had this to say:

This Court follows the general rule that waiver or estoppel can have a field of operation only when the subject matter is within the terms of the policy, and they cannot operate radically to change the terms of the policy so as to cover additional subject matter. Waiver or estoppel cannot operate so as to bring within the coverage of the policy property, or a loss, or a risk, which by the terms of the policy is expressly excepted or otherwise excluded. An insurer may be estopped by its conduct or knowledge from insisting on a forfeiture of a policy, but the coverage or restrictions on the coverage cannot be extended by the doctrines of waiver or estoppel.

*Employers Fire Insurance Co. v. Speed,* 242 Miss. 341, 133 So.2d 627, 629 (1961).

Though the court in *Caves* does not expressly invoke this doctrine, neither does it give any hint that the long line of cases applying it is being overruled. *Caves* can clearly be read as being consistent with these cases because the provision which the court held to have been waived was certainly a forfeiture provision. The holding that the condition precedent had been waived did not create coverage that did not exist under the terms of the policy nor did it extend coverage to risks specifically excluded. In the case at bar, a holding that the company had waived the provision excluding coverage for disabilities resulting from injury or sickness that first manifested itself prior to the issuance of the policy would obviously extend coverage to a risk that was expressly excluded by the terms of the policy. This we cannot do.

■ There is also involved in this case the closely analogous question of whether First Continental is bound by the representations allegedly made by its agent, John Earhart. Assuming, without deciding, that Earhart told the Kennedys that they would be covered if the company kept their check and did not require them to undergo a medical examination, the company would not be bound by that representation under the facts of this case. Many decisions of the Mississippi Supreme Court state that the general law of agency applies to the relationship between insurance companies and their agents. *See, e.g., Ford v. Lamar Life Insurance Co.,* 513 So.2d 880 (Miss. 1987). Under that general law of agency, "a principal is bound by the actions of its agent within the scope of that agent's real or apparent authority." *Id.* at 888. There is no evidence in this case to suggest that Earhart had actual authority to extend the coverage of the policy to risks which the policy specifically excluded. "One seeking to recover based on the theory of apparent authority must show 1) acts or conduct on the part of the principal indicating the agent's authority, 2) reliance on those acts, and 3) a detrimental change in position." *Id.* In the present case, the only action taken by the Kennedys in reliance on the alleged misrepresentations was the application for and payment of premiums on the insurance policy. This court is not convinced that this alone shows detriment to the Kennedys. Though they parted with some of their hard-earned money, they got an insurance policy in return which covered them for any disability which resulted from a condition which first manifested itself after the issuance of the policy.

## CONCLUSION

Assuming, without deciding, that the Kennedys fully disclosed their medical history to First Continental's agent, the company still prevails on the preexisting condition defense. Because of this holding that the company was justified in denying the claim the court need not reach the issue of punitive damages.

An order in conformance with this opinion shall issue.

## JUDGMENT

In accordance with an opinion entered on this day, IT IS ORDERED AND ADJUDGED:

That judgment is hereby entered for the defendant.