830 So.2d 1230 (2002)
AMERICAN INCOME LIFE INSURANCE COMPANY
v.
Deloise (Townsend) HOLLINS.
No. 1999-CA-00528-SCT.
Supreme Court of Mississippi.
November 21, 2002.
*1234 Kenna L. Mansfield, Jr., Lana E. Gillon, Jackson, for appellant.
William Liston, III, William H. Liston, Winona, W. Noel Harris, Greenville, for appellee.
EN BANC.

ON MOTION FOR REHEARING
McRAE, Presiding Justice, for the Court.
¶ 1. The motion for rehearing is granted. The original opinions are withdrawn, and these opinions are substituted therefor.
¶ 2. American Income Life Insurance Company (AILIC) appeals the judgment of the Humphreys County Circuit Court entered on a jury's verdict of $400 in compensatory damages and $100,000 in punitive damages. We hold that the jury had before it evidence sufficient to support the finding that misrepresentations recorded in the hospital indemnity insurance application by AILIC's agent did not render the policy void and that the agent, acting within his apparent authority, bound AILIC to extend coverage to Deloise Hollins's preexisting condition of "female problems." Hollins's reliance on the agent's statement was reasonable and to her detriment, for it was approximately one year later that she filed a claim for surgery. The circuit court therefore did not err in failing to grant a directed verdict in favor of AILIC, or in failing to grant a jury instruction that was abstract and confusing.
¶ 3. Approximately one year after the claim was filed AILIC appeared to have done post-claims underwriting and rescinded Hollins's policy only after she sought to recover for her condition that AILIC claimed was preexisting. The circuit court was therefore within its discretion in placing the issue of punitive damages before the jury. AILIC has not demonstrated that the punitive damage award in this case falls within the exceptional circumstances required to disturb the jury's verdict. AILIC has not demonstrated that the punitive damage award in this case should be disturbed. For these reasons, the judgment entered on the jury's verdict is affirmed.

FACTS AND PROCEDURAL HISTORY
¶ 4. Deloise (Townsend) Hollins ("Hollins") filed suit against American Income Life Insurance Company ("AILIC") and Amos J. Jones, AILIC's agent, on November 22, 1994. After Hollins submitted an insurance claim form, AILIC responded with a letter dated March 3, 1993, in which it denied the claim, rescinded the policy, and returned Hollins's premiums because of "additional health history not recorded on your application for this policy." AILIC asserted that the insurance policy issued to Hollins was void ab initio because of material misrepresentations in the application and that the claim underlying this cause of action arose from a preexisting condition that was excluded by the policy terms.
¶ 5. Prior to trial, Amos Jones died, and Hollins dismissed the action against him. A jury trial on this cause began on November 2, 1998, at the conclusion of which the jury returned a verdict in favor of Hollins and awarded actual damages of $400. The case was then argued before the jury on the issue of tortious breach contract, and the jury awarded Hollins $100,000 in punitive *1235 damages. The Humphreys County Circuit Court entered judgment on the jury verdict on December 22, 1998, from which AILIC appeals.
¶ 6. Since the age of seventeen, Hollins has suffered from "female problems" consisting of lower abdominal pain, vaginal burning, and nausea. At the time of trial she was thirty-six. When these problems would flare up, she would seek treatment, and the problem would clear up for a while. On October 1, 1991, Hollins saw her regular physician, Dr. Walter Gorton, because her problems were worsening. On January 2, 1992, she sought treatment at the emergency room of South Sunflower County Hospital in Indianola, Mississippi. Thereafter, she saw Dr. Gorton on January 6, 10, and 14.
¶ 7. Hollins testified that she first met Amos Jones ("Jones"), an insurance agent for AILIC, several years prior to purchasing the policy underlying this action. According to Hollins, she contacted Jones several days prior to January 14 to inquire about purchasing hospital indemnity insurance in light of her worsening problems. Jones met with Hollins on the evening of January 14, 1992. Hollins's mother, Lillie B. Lee, her sister, Francine McClain, and her then-fiance, Louise Hollins, Jr., were present during this meeting and testified in accordance with Hollins.
¶ 8. Jones took charge of the hospital indemnity insurance policy application, asking Hollins the questions in the application and recording her responses. Hollins and her witnesses testified that she disclosed to him her current and past "female problems," i.e., that her ovaries and fallopian tubes were infected. Hollins's witnesses further testified that Jones told Hollins that her female problems would be covered by the policy as long as she had not undergone surgery for them, which she had not. No documents were left with Hollins at this time. She testified that Jones delivered the policy to her some time thereafter, on exactly which day she was not sure.
¶ 9. During the application process, Hollins was seated next to Jones. She testified that she did not look to see what he wrote on the application and that she signed it without checking it for accuracy and gave Jones the first month's premium. The application disclosed only one "checkup," performed on January 14. Amos Jones died on July 25, 1997, and therefore did not testify at trial, though he denied the allegations in a deposition.
¶ 10. On January 15, 1992, an ultrasound revealed fibroid tumors on Hollins's ovaries and bladder. Hollins was eventually required to undergo surgery for her condition, which had been diagnosed as pelvic inflammatory disease, on November 24, 1992. She was subsequently hospitalized for four days. On December 21, 1992, Hollins filed the claim form at issue, seeking benefits of $100 per day of hospitalization.

DISCUSSION
I. Whether Hollins's prior medical history rendered her insurance policy voidable due to a misrepresentation in the application, and her claim invalid based on the preexisting condition provision of the policy.
¶ 11. "We have said that in cases where the agent takes charge of the application or suggests the answers to the question, `the company shall not avoid the policy because they are false or untrue, if full disclosures were made by the applicant to him.'" McCann v. Gulf Nat'l Life Ins. Co., 574 So.2d 654, 657 (Miss.1990) (citing Nat'l Life & Acc. Ins. Co. v. Miller, 484 So.2d 329 (Miss.1985)) (quoting Planters' *1236 Ins. Co. v. Myers, 55 Miss. 479, 507 (1877)). Furthermore:
[W]here the insure[d] gives correct information to the company's agent who, in turn, fills out the application, leaving out or altering certain information, there has been no misrepresentation [by the applicant].
The fact that the applicant signs the application without reading it does not bar her from attempting to prove that the answers contained therein do not accurately reflect the information she gave the agent.
Pongetti v. First Continental Life & Acc. Ins. Co., 688 F.Supp. 245, 247 (N.D.Miss. 1988) (citing World Ins. Co. v. Bethea, 230 Miss. 765, 93 So.2d 624 (1957); Home Ins. Co. of New York v. Thornhill, 165 Miss. 787, 144 So. 861 (1932)).
¶ 12. Hollins's coverage began on January 14, 1992. Prior to purchasing the policy, between October 1, 1992, and January 14, 1992, Hollins sought treatment for her female problems five times. The insurance agent, Jones, took charge of the application process. He asked Hollins the questions set forth in the application and filled in the answers for her on the form. Hollins told him that she had experienced female problems since the age of seventeen, that she was currently experiencing them, and the she had seen and was continuing to see a doctor in regard to these problems. The only disclosure of this information on the application was a single "check-up" on January 14, 1992, the date of application. Hollins testified that she signed the application without doublechecking the information written on the form by Jones. She and three other witnesses testified to these events. AILIC was therefore not entitled to rescind this policy based on material misrepresentations in the application.
¶ 13. In addition, the record reveals that Hollins owned an additional policy with AILIC, and in 1990 submitted a claim form in which she divulged that she had experienced "female problems." She had also informed AILIC of her female problems when she purchased a policy from it in 1987. AILIC therefore had actual knowledge of Hollins's problems before issuing the policy sub judice in 1992. Only after the filing of the claim at issue was Hollins's medical information reviewed by AILIC's underwriting department, which determined that it "would have declined to issue until resolution of diagnosis of female problem." Based on this determination, Hollins's policy was then rescinded.
¶ 14. We have condemned this practice of post-claim underwriting and cautioned insurers to abstain from such practices in the future. "An insurer has an obligation to its insureds to do its underwriting at the time a policy application is made, not after a claim is filed." Lewis v. Equity Nat'l Life Ins. Co., 637 So.2d 183, 188-89 (Miss.1994).
¶ 15. After finding that the policy was not properly rescinded, we must next address whether Hollins's female problems were properly excluded from coverage by the policy as preexisting conditions. The front page of the insurance policy at issue contains a provision that expressly excludes conditions for which medical advice or treatment was received in the two years prior to the effective date of coverage.
¶ 16. AILIC's reliance on Pongetti v. First Continental Life & Acc. Ins. Co., 688 F.Supp. 245 (N.D.Miss.1988), however, is misplaced. It contends that an insurer is not bound by the statements of its agents if "no evidence existed which would indicate that the agent had actual authority to extend the coverage of the policy to risks which were specifically excluded by the policy." It further states that "[a]ny *1237 knowledge ostensibly imputed to AILIC as a matter of law is neither relevant nor material to whether coverage exists for the preexisting condition." On these points, AILIC's interpretation is disingenuous.
¶ 17. In Pongetti, the plaintiff claimed to have disclosed a prior medical condition to the agent, who completed the application form and told her that "so long as the company kept her check and did not direct her to get a physical, she would be covered." The agent denied these allegations. The federal district court found it unnecessary to resolve whether the statement was made, finding that the plaintiffs had not satisfied the detriment element of apparent authority. Its holding was based on the fact that the policy remained in force and would operate to cover conditions which were not preexisting. Pongetti may therefore be distinguished from the case at bar, as AILIC rescinded its policy with Hollins in response to her claim. She was no longer covered for any condition which arose before or after the policy took effect and, therefore, did not receive the coverage for which she bargained.
¶ 18. We and other courts have held insurers to be bound by the actions of their agents acting within the scope of apparent authority, regardless of the policy's actual terms.[1] A three-prong test must be met in order to recover under the theory of apparent authority. Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1180 (Miss.1990). A plaintiff must show: C1) acts or conduct on the part of the principal indicating the agent's authority, C2) reasonable reliance on those acts, and C3) detriment as a result of such reliance.
¶ 19. "[T]hose dealing with such agents without notice of restrictions upon the agents' authority have a right to presume that their authority is" what it appears to be. Williams, 566 So.2d at 1182. Jones was a formal agent of AILIC, authorized to sell insurance, to complete and submit applications, to receive and deliver policies, and to collect and submit policy premiums. The business card provided to Hollins by Jones identified him as a "General Agent." He took control of her application, filling in the answers, accepted the premium, and subsequently delivered the policy to Hollins. The first prong is therefore satisfied based on the Fifth Circuit's holding in Nichols, 923 F.2d at 1162 (formal agent of insurer who completes application and accepts premiums fulfills the burden of proof on first prong).
¶ 20. In response to a specific question from Hollins, Jones told her that, as long as she had not undergone surgery for her condition, it would be covered by the policy. At the time this statement was made to her, Hollins was not notified of the actual terms in the policy. Nothing in the application or other documents indicate that Jones did not have the authority to tell Hollins that her female problems would be covered under the policy. The only restrictions on Jones's authority appear *1238 in the policy itself, page nine, which contains a provision that states that "[n]o agent may change this policy or waive any of its provisions." When the statement at issue was made to Hollins, she was also not provided with notification of the preexisting condition exclusion which controverted the statement.
¶ 21. Hollins did not receive the policy until some time after the night of January 14, 1992, the date of the application, and the application did not contain the preexisting condition exclusion. Therefore, Hollins had already relied on Jones's statement before receiving the policy wherein she was notified of the limitations on Jones's authority and of the preexisting condition exclusion. That she did not read it does not alter the fact that she relied on Jones's statements before the policy was provided to her. The exclusion contained in the policy, while unambiguous, was not made available until after she had purchased the insurance in reliance on Jones's statement. Because Hollins was not informed otherwise prior to relying on Jones's statement, her reliance on the statement that her condition would be covered was reasonable.
¶ 22. The issue of reasonable reliance was addressed in Barhonovich v. American Nat'l Ins. Co., 947 F.2d 775, 778 (5th Cir.1991). There the Fifth Circuit held that the insured did not have the right to rely on fraudulent statements made by the insurance agent, which were in direct conflict with the terms of the policy. The insured purchased a policy that stated on its face that the payment term was for "LIFE." Approximately fifteen years later an agent told him that he need not pay premiums any longer. This case is distinguishable in that Hollins was not given notice of the exclusion at the time of relying on the agent's misrepresentation.
¶ 23. Finally, Hollins's reliance on Jones's statement operated to her detriment. Unlike the plaintiffs in Pongetti, 688 F.Supp. 245, AILIC unjustifiably rescinded its policy with Hollins in response to her claim. Jones represented to Hollins that her condition would be covered, but the filing of her claim resulted in the rescission of her policy. Her reliance on Jones's statement therefore operated to her detriment. Hollins's claim was not paid by the insurance company, and she was no longer covered under the policy even for unrelated conditions which arose after the policy took effect. When an insured becomes ill and the company rescinds the policy, the insured is then placed into a position of not being able to get another policy or one that has very limited coverage.
¶ 24. Whether the evidence is sufficient to meet the test for the apparent authority of agents is an issue for the factfinder. Baxter Porter & Sons Well Servicing Co. v. Venture Oil Corp., 488 So.2d 793, 796 (Miss.1986). A jury verdict, as long as the jury was correctly instructed in the law, will not be reversed on appeal absent a showing that, based on the evidence as a whole taken in the light most favorable to the verdict, no reasonable juror could have found as the jury found. Starcher v. Byrne, 687 So.2d 737, 739 (Miss.1997) (collecting authorities). A jury's verdict will stand if it is based on evidence sufficient to support a finding that the misrepresentations in the application were perpetrated by the agent and that the agent, acting within his apparent authority, bound AILIC to extend coverage to Hollins's preexisting female problems.
II. Whether the circuit court erred in failing to grant its motion for directed verdict as to fraud in the inducement.
¶ 25. Hollins's claim for fraud is founded on the statement made to her by Jones *1239 at the time of completing her policy application. She and three other witnesses testified that Hollins described her history of female problems to Jones, who responded that as long as she had not undergone surgery for these problems, they would be covered by the policy.
¶ 26. A claim of fraud must satisfy nine elements: C1) a representation, C2) that is false, C3) that is material, C4) the speaker's knowledge of its falsity or ignorance of its truth, C5) the speaker's intent that the hearer act upon it in the manner reasonably contemplated, C6) the hearer's ignorance of its falsity, C7) her reliance on its truth, C8) her right to rely thereon, and C9) her consequent and proximate injury. Martin v. Winfield, 455 So.2d 762, 764 (Miss.1984) (collecting authorities). Each of these elements must be proven by clear and convincing evidence. Id.
¶ 27. On appeal, AILIC argues that "Hollins failed to establish each of those elements." In its brief, however, AILIC only discusses one element of fraud: Hollins's right to rely on the statement made by Jones that her female problems would be covered by the policy as long as she had not undergone surgery for it. AILIC contends that the policy itself states that its agents do not have this authority, and that this knowledge is imputed to Hollins. As discussed in Issue I, Jones was acting under the apparent authority to make the statement to Hollins that her condition would be covered before she was ever provided with the policy, and she was entitled to rely on it.
¶ 28. When the statement at issue was made to Hollins, she had not been informed of the limitations on Jones's authority to make such statements, and she was not provided with notification of the preexisting condition exclusion which controverted the statement. She was therefore entitled to rely on the statement that her condition would be covered.
¶ 29. In reviewing a refusal to grant a directed verdict, the jury's verdict must be affirmed if there is substantial evidence to support the verdict, such that reasonable and impartial jurors might have reached different conclusions. Am. Fire Protection, Inc. v. Lewis, 653 So.2d 1387, 1390-91 (Miss.1995). Because there is substantial evidence to support the jury's finding that Hollins was entitled to rely on the statement made by Jones, the circuit court did not err in refusing to grant a directed verdict in AILIC's favor on the issue of fraud.
III. Whether the issue of punitive damages was properly before the jury where AILIC had an arguable reason for denying the claim, and whether the claim was grossly excessive or otherwise improper.
¶ 30. In State Farm Mut. Auto. Ins. Co. v. Grimes, 722 So.2d 637, 643 (Miss.1998), we held that a punitive damage award requires a knowing deliberate action, rather than an isolated clerical error. We went on to summarize the law as follows:
The law of this State does not impose punitive damages in cases in which a carrier is determined to have merely reached an incorrect decision in denying a given claim. The issue of punitive damages should not be submitted to the jury unless the trial court determines that there are jury issues with regard to whether:
1) The insurer lacked an arguable or legitimate basis for denying the claim, and

2) The insurer committed a wilful or malicious wrong, or acted with gross and *1240 reckless disregard for the insured's rights.
Id. at 641.
¶ 31. However, we have also held that the issue of punitive damages may be submitted to a jury under certain circumstances even where an arguable basis defense exists. "Mississippi law has evolved to a point of recognition that the punitive damages issue may be submitted notwithstanding the presence of an arguable basis." Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d at 1186 (applying the "lying exception" to find that the issue of punitive damages was properly before the jury due to misrepresentations made by agent in spite of an arguable basis defense). See also Nichols v. Shelter Life Ins. Co., 923 F.2d at 1165-66 (punitive damages were properly before jury where agent misrepresented to insured that a preexisting cancerous tumor would be covered by the policy, in spite of the presence of a legitimate and arguable basis for denying the claim).
¶ 32. In Williams, the insurance agent completed the application form, failed to include a heart condition that Williams had disclosed to him, and misrepresented certain policy provisions to Williams. We held that such misrepresentations create a jury issue regarding whether denial of the claim was arguable. Id. at 1187. An award of punitive damages requires a finding of an intentional wrong or reckless disregard for the insured's rights that give rise to an independent tort, separate from breach of contract, based on a preponderance of the evidence. Id. at 1188 (citations omitted). Acts of fraud constitute the type of independent tort that give rise to punitive damages. Id. (citing Fowler Butane Gas Co. v. Varner, 244 Miss. 130, 151, 141 So.2d 226, 233 (1962)).
¶ 33. In any event, the jury here found that AILIC lacked an arguable basis for denying the claim and that it did so with malice or with such gross negligence as to amount to a reckless disregard for her rights. As a result, the two-prong test discussed in Grimes has been met. During the damages phase of the trial, the court granted jury instruction 4, which required the jury to find the following by a preponderance of the evidence before assessing punitive damages:
1) American Income Life rescinded Ms. Hollins's policy of insurance and/or denied her claim for hospital indemnity benefits under her policy of insurance, and
2) American Income Life lacked a logical or arguable reason or basis for its rescission of the policy or its denial of the claim, and
3) In rescinding Ms. Hollins's policy or denying her claim against American Income Life acted with malice or with such gross negligence as to amount to a reckless disregard of Ms. Hollins's rights.
¶ 34. Furthermore, we have held that it is within the discretion of the trial judge to determine if the issue of punitive damages should be placed before the jury. Universal Life Ins. Co. v. Veasley, 610 So.2d 290, 293 (Miss.1992). When a trial court places the issue of punitive damages before a jury, "that decision should stand absent compelling grounds for reversal." Grimes, 722 So.2d at 642.
¶ 35. In the case at bar, the jury found that AILIC's agent, acting with his scope of apparent authority, fraudulently misstated to Hollins that her female problems would be covered by the policy as long as she had not undergone surgery for them prior to purchasing the policy. It also found that the agent had taken control of completing the application for Hollins and that he did not correctly record the *1241 information given to him regarding her female problems.
¶ 36. We reaffirmed our earlier holdings on this issue in Lewis v. Equity Nat'l Life Ins. Co., 637 So.2d 183, 186-87 (Miss. 1994). In Lewis, we held that where an agent has misrepresented information that the insured has disclosed to him, "the issue of punitive damages may go the jury despite an arguable reason for denying the claim." Id. Case law also supports the award of punitive damages "where an agent has knowledge of a preexisting condition of the insured but fails to communicate that knowledge to the insurance company and subsequently, the insurer refuses a claim because of the preexisting condition." McCann v. Gulf Nat'l Life Ins. Co., 574 So.2d 654, 657 (Miss.1990) (citing S. United Life Ins. Co. v. Caves, 481 So.2d 764 (Miss.1985)).
¶ 37. Because of the misrepresentations of its agent, AILIC rescinded Hollins's policy due to incorrect information in the application and refused her claim because of the preexisting condition. For these reasons, the circuit judge was within her discretion in placing the issue of punitive damages before the jury, regardless of any arguable basis defense.
¶ 38. At any rate, in awarding punitive damages on the issue of tortious breach of contract, the jury found that AILIC lacked an arguable basis for rescinding the policy or denying her claim. In Grimes, we upheld the punitive damage award, finding that a jury could have reasonably found that the defendant lacked an arguable basis for denying the claim. "Where the trial court allows the question of reasonableness to be put to the conscience of the community, the civil jury, that decision should stand absent compelling grounds for reversal." Id. at 643. Likewise, we find no such compelling grounds here.
¶ 39. AILIC also fails in its claim that the amount of punitive damages awarded by the jury was grossly excessive, was influenced by passion, prejudice, and bias toward AILIC, and was unconstitutional based on BMW of North Am., Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996). It has offered little substantiation for this broad contention.
¶ 40. Mississippi law recognizes four factors to be applied in determining the amount of a punitive damage award. First, the amount should punish the insurer and deter it from engaging in similar actions in the future. Second, the amount should serve as a deterrent for others. Third, the amount should account for the insurer's financial worth. Fourth, the amount should compensate the plaintiff for her public service in holding the insurer accountable. Williams, 566 So.2d at 1190.
¶ 41. In support of its argument, AILIC alleges that Hollins has performed no public service in bringing this action and goes one step farther to claim that she has been rewarded for not reading her policy, because "[i]f she had, she would have seen the preexisting condition exclusion on the front page of the policy." This argument fails because Hollins did not even receive the policy until after she had relied on Jones's apparent authority to state that the condition would be covered.
¶ 42. AILIC further argues that it has not acted reprehensibly in denying the claim and rescinding the policy because it had an arguable basis for doing so. As discussed above, a reasonable basis will not excuse the denial of a claim based on a preexisting condition if the agent acting within apparent authority represented that the condition would be covered. Furthermore, AILIC did not merely deny a claim based on a preexisting condition. It also improperly rescinded the policy due to omissions in the application that was completed *1242 by the agent after full disclosures were made to him by the insured. Postclaim underwriting after a claim is made puts the insured at peril with any other insurance company.
¶ 43. Finally, AILIC argues that the punitive award of $100,000 is unconstitutionally out of proportion with the actual damages of $400. It notes that the punitive damages verdict is 250 times that of the compensatory, and it claims that this disparity is violative of the United States Supreme Court's holding in Gore. In that case, the Supreme Court observed that the constitutional line is not clearly drawn and cannot be determined by a simple mathematical formula. Gore, 517 U.S. at 560, 116 S.Ct. 1589. It went on to hold that the award in that case, 500 times the actual damages, was clearly unacceptable. Id.
¶ 44. In the past we have shown great deference to juries that have awarded punitive damages.[2] The amount of a punitive damage award is within the jury's discretion.[3] The jury's verdict will not be disturbed absent exceptional circumstances. Williams 566 So.2d at 1190. Such circumstances exist where the amount is arbitrary or unreasonable, against the overwhelming weight of the evidence, Bailey, 393 So.2d at 472, or shows passion or prejudice so as to shock the conscience of the court. Bankers Life & Cas. Co. v. Crenshaw, 483 So.2d 254, 278 (Miss.1986). Furthermore, "[w]e are not authorized to disturb a jury verdict regarding amount of damages because it `seems too high' or `seems too low.'" Crenshaw, 483 So.2d at 278 (citing Toyota Motor Co. v. Sanford, 375 So.2d 1036, 1037 (Miss.1979)).
¶ 45. We also recognize that the U.S. Supreme Court has held that where a federal constitutional challenge is made to a punitive damages award on the basis of excessiveness, then and only then, are we required to conduct a de novo review of the award. Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 121 S.Ct. 1678, 149 L.Ed.2d 674 (2001). See also Todd v. Roadway Exp., Inc., 178 F.Supp.2d 1244, 1245-46 (M.D.Ala.2001); Time Warner Entertainment Co. v. Six Flags Over Georgia, LLC, 254 Ga.App. 598, 563 S.E.2d 178 (2002). Essentially, Cooper gives a defendant another bite at the appellate apple if it clearly alleges a federal constitutional violation.
¶ 46. Even though AILIC has made no indication whatsoever how the application of the de novo standard, as announced in Cooper, would change the verdict in this case, since AILIC has made a federal constitutional challenge that the punitive damages award is excessive, we will conduct a de novo review of the $100,000 punitive damages award at this time.
*1243 ¶ 47. Under our deference to the jury standard as espoused in Williams, 566 So.2d at 1190, and as discussed above, we would be remiss to delve into the mind of the jury to divine a different conclusion.
¶ 48. However, under a de novo standard of review, we review all of the facts, evidence and law anew. In essence, then, we become the finder of fact, and the verdict maker. We have already established the facts that made it proper for the trial judge to send the issue of punitive damages to the jury. Those same facts are relevant to the constitutional excessiveness challenge as well. Of additional importance to our review is that the trial transcripts indicate that AILIC is a corporation with a net worth of $63,623,768. In light of our factual conclusions in this case as well as the stated net worth of AILIC, a punitive damages award of $100,000 is not excessive.
¶ 49. As we have already noted, punitive damages are excessive only when they are against the overwhelming weight of the evidence, show bias, passion or prejudice or are unconstitutional pursuant to Gore.
¶ 50. Again, the purpose of a punitive damages award is not to compensate the plaintiff for actual damages, but rather to punish and deter the defendant from further behavior, to deter similar behavior by other potential defendants, and to compensate the plaintiff for her public service in holding the insurer accountable. Williams, 566 So.2d at 1190. We also reiterate that the amount of the award should account for the insurer's financial worth. Id. Juries are asked not to go so far as to bankrupt a defendant, but to make sure that it renders a decision that will cause the defendant to think before engaging in the same intolerable conduct. The measure of punitive damages, therefore, is not relative to actual damages, but rather, to the defendant's worth.
¶ 51. On de novo review, we find that, based on the record, a $100,000 punitive damages award against a corporation with a net worth over $63 million is not so excessive as to shock the conscience of this Court; it is no more than a drop in AILIC's bucket. Neither do we find that the award was against the overwhelming weight of the evidence nor the product of bias, passion, or prejudice.
¶ 52. AILIC has simply not demonstrated that the punitive damage award in this case is constitutionally excessive or falls within the exceptional circumstances that are required under our common law to disturb a jury's verdict. In light of the facts and our holdings in other cases, the amount of this award is not so great as to shock the conscience of this Court.
IV. Whether the circuit court erred in failing to grant jury instruction D-13.
¶ 53. Proposed jury instruction D-13 states:
The court further instructs the jury that a person has a duty to read an insurance contract to which they are a party. If an insurance contract is placed in a person's hands and that person fails or neglects to read it, they are nevertheless bound by the terms and provisions of the written contract.

(emphasis added). AILIC claims that this instruction is a correct statement of the law based on Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 419 (Miss.1987). In that case, the Court held that "Both Richard Cherry and Edwin Cherry testified that they had read the entire policy. Even if they had not, knowledge of its contents would be imputed to them as a matter of law." Id. (emphasis added).
*1244 ¶ 54. There is a vast difference between stating that one is bound by contract terms and stating that one possess knowledge of the contract terms. "Bound by the terms" of a contract requires not only knowledge of the terms, but also a determination that, on the particular facts at bar, the terms are legally binding on the parties. That one who receives an insurance contract but does not read it is automatically bound by its terms as a matter of law is not a correct statement of the law. This instruction requested by AILIC is abstract, confusing, and legally incorrect, and, the trial court did not err in refusing to so instruct the jury.

CONCLUSION
¶ 55. There exists evidence sufficient to support a finding that the misrepresentations in the application were perpetrated by the agent and that the agent, acting within his apparent authority, bound AILIC to extend coverage to Hollins's preexisting condition. Hollins reasonably relied on the agent's representation to her detriment. The circuit court therefore did not err in failing to grant a directed verdict in favor of AILIC. The circuit court also did not err in refusing to grant a jury instruction that deemed Hollins "bound by the terms" of the policy where jury questions existed on this point.
¶ 56. Because of the misrepresentations of its agent, AILIC rescinded Hollins's policy due to incorrect information in the application and refused her claim because of the preexisting condition. Therefore, the circuit judge was within her discretion in placing the issue of punitive damages before the jury, regardless of an arguable basis defense raised by AILIC, which has not demonstrated that the punitive damage award in this case is constitutionally excessive or falls within the exceptional circumstances required to disturb the jury's verdict. For these reasons, the judgment entered on the jury's verdict is affirmed.
¶ 57. AFFIRMED.
DIAZ, EASLEY AND GRAVES, JJ., CONCUR.
PITTMAN, C.J., CONCURS IN RESULT ONLY.
SMITH, P.J., DISSENTS WITH SEPARATE WRITTEN OPINION JOINED BY WALLER, COBB AND CARLSON, JJ.
SMITH, PRESIDING JUSTICE, DISSENTING:
¶ 58. I respectfully disagree with the majority's application of law and reasoning on all issues. The majority errs in concluding that Hollins's prior medical history did not render her insurance policy voidable. Under Mississippi law, a misrepresentation on the application for an insurance policy, if it is material to the risk assumed, makes the contract voidable at the instance of the insurer. Coffey v. Standard Life Ins. Co., 238 Miss. 695, 707, 120 So.2d 143, 149 (1960). However, where the insurer gives correct information to the company's agent who, in turn, fills out the application, leaving out or altering certain information, there has been no misrepresentation. World Ins. Co. v. Bethea, 230 Miss. 765, 93 So.2d 624 (1957). Mississippi law further states that the fact that the applicant signs the application without reading it does not bar her from attempting to prove that the answers contained therein do not accurately reflect the information she gave to the agent. Home Ins. Co. v. Thornhill, 165 Miss. 787, 144 So. 861 (1932).
¶ 59. The interplay of these two rules presents a factual dispute. This Court, however, need not decide this factual dispute *1245 in this case. The case at bar is similar to Pongetti v. First Continental Life & Acc. Co., 688 F.Supp. 245 (N.D.Miss.1988), where the court applied Mississippi law. Like in the case sub judice, the insurance company in Pongetti raised a second reason why its failure to pay should be excusedthe preexisting condition specifically excluded from coverage the disabilities for which the plaintiff filed the claims. Id. at 248. The court restated Mississippi law, concluding that it is well established that clauses in disability and hospitalization policies excluding or limiting liability for sickness or injury arising before certain times are valid. Id. (citing Mutual of Omaha Ins. Co. v. Walley, 251 Miss. 780, 171 So.2d 358 (1965)).
¶ 60. The hospital indemnity policy at issue in this matter expressly excluded from coverage a loss resulting from a condition for which the insured received medical advice or treatment during the two years immediately preceding the effective date of coverage. In Hollins's case, the criteria were met. Hollins's coverage under the subject hospital policy became effective, if at all, on January 14, 1992. There is no dispute that the surgery for which Hollins was hospitalized in November 1992 was a result of the female problems for which she had been receiving treatment at the time she called agent Jones to apply for the subject hospital policy. In the three and one-half months before she applied for the subject policy, she sought treatment for female problems on four separate occasions: October 1, 1991, January 6 and 10, 1992, and earlier in the day on January 14, the same day she met with Jones and completed the application. Also, she sought treatment at the South Sunflower County Hospital emergency room on January 2, 1992, for female problems.
¶ 61. Further, Hollins admitted that two days after she applied for the subject policy, Dr. Gorton told her that, based on what he saw from the ultrasound, she might have to have surgery. A dispute existed between Hollins and two of her witnesses with regard to whether Hollins had been told by her doctor before she met with Jones that she might have to have surgery. However, there is no dispute that the reason she called Jones was that her condition was getting worse, and she thought she might need supplemental coverage.
¶ 62. The preexisting condition exclusion is located in the middle of the front page under a heading in bold stating: "PREEXISTING CONDITIONSLIMITATIONS." It is not a difficult provision to understand or apply. Hollins testified that she could read and understand the provisions. Additionally, Hollins had educational training and studies in biology and had majored in nursing at Malcolm X College in Chicago. Moreover, she testified that there was no question that her surgery was a result of conditions that had been treated within two years before the policy went into force. She specifically acknowledged that, under the preexisting condition provision, her claim was not payable. In my view, it is clear that the condition which forms the basis of Hollins's claim preexisted the effective date of policy coverage, and is therefore, excluded from coverage under the policy.
¶ 63. There is also involved in this case the close analogous question of whether AILIC is bound by the representations of the agent. Assuming, without deciding, that Jones told Hollins that she would be covered as long as she had not undergone surgery for her condition, the company would not be bound by that representation under the facts of this case. As the majority notes, many decisions of this Court *1246 state that general law of agency applies to the relationship between insurance companies and their agents. See, e.g., Ford v. Lamar Life Ins. Co., 513 So.2d 880, 887-88 (Miss.1987). "[A] principal is bound by the actions of its agent within the scope of that agent's real or apparent authority." Id. at 888.
¶ 64. There is no evidence in this case to suggest that Jones had actual authority to extend the coverage of the policy to risks which the policy excluded. The United States Court of Appeals for the Fifth Circuit, applying Mississippi law, has held that an agent had no real authority where there was express language in the policy, similar to that contained in the AILIC policy in the case sub judice, that the agent cannot modify the terms and conditions of the policy. Barhonovich v. Am. Nat'l Ins. Co., 947 F.2d 775, 777 (5th Cir. 1991).
¶ 65. The three-prong test which must be met to recover under a theory of apparent authority is well-established. "Specifically, recovery requires a sufficient showing of: (1) acts of conduct on the part of the principal indicating the agent's authority, (2) reasonable reliance on those acts, and (3) a detrimental change in position as a result of such reliance." Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1181 (Miss.1990); Lamar Life Ins. Co., 513 So.2d at 888. Although the majority argues that the first prong is met, that is simply not so. Hollins's reliance on Jones's misrepresentations cannot be deemed reasonable under the circumstances. It is my view that Hollins's reliance on Jones's statement that as long as she had not had surgery she would be covered was not reasonable in view of the clear, unambiguous policy language specifically indicating that a preexisting condition was excluded. In Barhonovich, the Fifth Circuit addressed a similar matter and concluded that the plaintiff's reliance on the agent's alleged misrepresentations was not reasonable due to the clear and unambiguous language set forth in the insurance policy to the contrary. Barhonovich, 947 F.2d at 778. Since all three prongs for apparent authority are not met, it is clear that Hollins cannot prevail under the theory of apparent authority.
¶ 66. In my view, Hollins failed to establish each of the nine elements for a cause of action based on fraud. Because proving fraud should be difficult, this Court has been clear that the nine elements must be proven by clear and convincing evidence. Martin v. Winfield, 455 So.2d 762, 764 (Miss.1984). Hollins argues that AILIC and Jones induced her to purchase a contract of insurance that they knew would not operate to provide coverage for her hospitalization and treatment of pelvic inflammatory disease. However, Hollins admitted at trial that the preexisting condition exclusion was set out in clear bold terms on the front page of the policy enabling her to see and understand it if she had only read her policy. Therefore, even if Jones made the oral representation as claimed by Hollins, she had no right to rely on the alleged misrepresentations, in light of the actual terms and provisions contained within the policy, including the express exclusions from coverage.
¶ 67. In Ford v. Lamar Life Ins. Co., 513 So.2d 880 (Miss.1987), John Ford submitted to Lamar Life Insurance agent Bill Gooch an application for a $100,000 life insurance policy. Id. at 881. The application provided, "No agent or any other person except an Officer of the Company, has the power to make, modify or discharge any insurance contract, or to bind the Company by making any promises respecting any insurance contract." Id. On June 1, 1981, before any final underwriting decision on the policy had been made by Lamar *1247 Life, agent Gooch told the Fords that John Ford was insured. Id. at 883. Like the case at bar, such a representation was in conflict with the statement on the application. The next day, John Ford was killed in a car accident. Id. at 883. Ford's wife filed suit against Lamar Life, contending that agent Gooch bound the company when he told the Fords that the John Ford was insured. Id. at 887. This Court found that the insurance agent did not have the actual authority to evaluate risk or bind the company, nor did the plaintiff establish the elements of apparent authority. Id. at 888-89. The judgment of the lower court in favor of Lamar Life was affirmed. Id. at 889.
¶ 68. In Barhonovich v. American Nat'l Ins. Co., 947 F.2d 775 (5th Cir.1991), the United States Court of Appeals for the Fifth Circuit affirmed summary judgment on behalf of the insurer. Id. at 779. The plaintiff maintained that he did not have to comply with the terms of the policy as written because American National was bound by the actions of its agent which modified the insurance contract and terminated any obligation to pay premiums. Id. at 777. The Court recognized that under Mississippi law, the insurance company is a principal which is bound by the actions of its agent within the scope of the agent's real or apparent authority. Id. (citing Lamar Life Ins. Co., 513 So.2d at 888). In ruling that the agent had no real authority, the Court relied on the express language in the policy, similar to that contained in the AILIC policy in the case sub judice, that the agent cannot modify the terms and conditions of the policy. Id. Relying on the holdings in Lamar Life Ins. Co., 513 So.2d at 888, and Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172, 1181 (Miss.1990), the Fifth Circuit concluded that the plaintiff's reliance on the agent's alleged misrepresentations was not reasonable due to the clear and unambiguous language set forth in the insurance policy to the contrary. Id. at 778. Therefore, all three elements required to prove apparent authority were missing. Id. (citing Andrew Jackson Life Ins. Co., 566 So.2d at 1181; Lamar Life Ins. Co., 513 So.2d at 888; Gulf Guar. Life Ins. Co. v. Middleton, 361 So.2d 1377, 1383 (Miss.1978)). Moreover, the Fifth Circuit noted that in Mississippi it is the duty of the person dealing with the agent to use reasonable diligence and prudence to ascertain whether the agent is acting and dealing with him within the scope of the agent's authority. Barhonovich, 947 F.2d at 778 (citing Consumers Credit Corp. v. Swilley, 243 Miss. 838, 138 So.2d 885, 889 (1962)).
¶ 69. In sum, it is well-settled that a plaintiff cannot, as a matter of law, establish a fraud claim when the defendant has provided specific disclosures about the risk that serves as the basis for the plaintiff's claim.
¶ 70. The majority errs in affirming the trial court's award of punitive damages. Such an award is neither supported by the evidence, nor by the law of Mississippi. The majority points to the alleged fraud of agent Jones as support for the punitive damages award. However, the punitive damage award was not based on Hollins's cause of action for fraud. While the jury was instructed on the Hollins's claims for breach of contract and fraud in the inducement at the end of the first phase of the trial, no instructions were submitted to the court by Hollins at the end of the punitive damage phase regarding fraud. The court submitted to the jury the issue of whether punitive damages should be awarded only in connection with Hollins's claim for tortious breach of contract. At the end of the punitive damages phase, the jury was not instructed regarding plaintiff's alleged claim of fraud. Accordingly, she cannot now seek to support her punitive damage *1248 award with her allegations of fraud by the agent.
¶ 71. The majority fails to recognize that this state imposes a heavy burden on the one making a charge of tortious breach of contract of claim. "As a general rule, exemplary or punitive damages are not ordinarily recoverable in actions for breach of contract." S. Cent. Bell v. Epps, 509 So.2d 886, 892 (Miss.1987). "[T]hey are recoverable where the breach results from an intentional wrong, insult, or abuse as well as from such gross negligence as constitutes an independent tort." Blue Cross & Blue Shield of Miss., Inc. v. Maas, 516 So.2d 495, 496 (Miss.1987). They are also recoverable "only in extreme cases." Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 460 (Miss.1983). See also Gardner v. Jones, 464 So.2d 1144, 1148 (Miss. 1985). Furthermore, since punitive damages are assessed as an example and warning to others, "they should be allowed only with caution and within narrow limits." Consolidated Am. Life Ins. Co. v. Toche, 410 So.2d 1303, 1304-05 (Miss.1982). Punitive damages are not favored under Mississippi law. Life & Cas. Ins. Co. v. Bristow, 529 So.2d 620, 622 (Miss.1988).
¶ 72. Until recently this Court had held that the fact that a trial judge had denied a motion for directed verdict on the underlying contract claim generally indicated that a punitive damage instruction should not have been submitted to the jury. Blue Cross & Blue Shield of Miss., Inc. v. Campbell, 466 So.2d 833, 843 (Miss.1984). This Court relaxed that rule in State Farm Mut. Auto. Ins. Co. v. Grimes, 722 So.2d 637, 640-41 (Miss.1998). However, the Court reaffirmed that "[t]he law of this State does not impose punitive damages in cases in which a carrier is determined to have merely reached an incorrect decision in denying a given claim." Id. at 641. Moreover, the test for assessing whether punitive damages should be considered remains a two-fold test:
The issue of punitive damages should not be submitted to the jury unless the trial court determines that there are jury issues with regard to whether:
1. The insurer lacked an arguable or legitimate basis for denying the claim, and
2. The insurer committed a wilful or malicious wrong, or acted with gross and reckless disregard for the insured's rights.
Id. (citing Bristow, 529 So.2d at 622).
¶ 73. At a minimum, AILIC had a legitimate or arguable basis for denying the claim. Without dispute, Hollins's claim falls within the terms of the preexisting condition exclusion clearly set out on the front page of the policy. Hollins has sought to avoid the exclusion by claiming that it was waived by AILIC's agent, or that AILIC should be estopped from relying on that exclusion due to the agent's knowledge and alleged representations. However, Mississippi law is clear that "waiver or estoppel cannot operate so as to bring within the coverage of the policy property, or a loss, or a risk, which by the terms of the policy is expressly excepted or otherwise excluded." Employers Fire Ins. Co. v. Speed, 242 Miss. 341, 346, 133 So.2d 627, 629 (1961).
¶ 74. Even if the law of this state were not so clear, it was further established that agent Jones did not have the actual authority to waive or alter the provisions of the policy. Further, no jury issue was even established on the question of actual authority. The jury was merely instructed with regard to whether Jones had the apparent authority to waive any of the terms of the policy. To prevail on her theory of apparent authority, Hollins had to establish three well-recognized elements, none of which were met.
*1249 ¶ 75. Even if Hollins had created a jury question on the issue of whether AILIC had a legitimate or arguable basis for denying the subject claim, she still had to prove that AILIC acted with malice or in gross disregard of her rights. There is simply no evidence that AILIC acted with malice, gross negligence, or reckless disregard for Hollins's rights in denying the claim. Persuasive is the fact that in phase two of the bifurcated trial, Hollins offered no further testimony, and the only evidence of any kind offered by the plaintiff was the financial statement of AILIC.
¶ 76. Assuming that punitive damages should have been awarded in this matter, I find the punitive damages of $100,000 in this matter excessive. In BMW of N. Am., Inc. v. Gore, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996), the Supreme Court held an award of punitive damages is constitutionally impermissible if is grossly excessive when considered in light of the reprehensibility of the conduct of the defendant. Id. at 575-76; 116 S.Ct. at 1598-99. Although the Supreme Court rejected the notion that the constitutional line is marked by a simple mathematical formula, the Court stated, "[w]hen the ratio is a breathtaking 500 to 1, however, the award must surely `raise a suspicious judicial eyebrow.'" Id. at 582-83, 517 U.S. 559, 116 S.Ct. 1589, 134 L.Ed.2d 809 (quoting TXO Prod. Corp. v. Alliance Resources Corp., 509 U.S. 443, 458, 482, 113 S.Ct. 2711, 125 L.Ed.2d 366 (1993) (O'Connor, J., dissenting)). In Paracelsus Health Care Corp. v. Willard, 754 So.2d 437 (Miss.2000), this Court noted that the Gore Court had held that a high ratio is justified in cases where the injury is hard to detect or the monetary value of non-economic harm might have been difficult to determine. Id. at 445. In the case sub judice, the plaintiff had no non-economic damages that were difficult to determine, nor was there an injury that was hard to detect. Like Justice Stevens writing for the Court in Gore, I am not prepared to draw a bright line marking the limits of an acceptable punitive damage award. I am, however, convinced that an award of $100,000 in punitive damages, which is 250 times the actual damages, is grossly excessive based on the facts and circumstances peculiar to this particular case.
¶ 77. It is my view that the trial court's refusal to grant AILIC's jury instruction D-13 constitutes reversible error. D-13 included the following statements:
The court further instructs the jury that a person has a duty to read an insurance contract to which they are a party. If an insurance contract is placed in a person's hands and that person fails or neglects to read it, they are nevertheless bound by the terms and provisions of the written contract.

(emphasis added). This instruction is a correct statement of the law based on Cherry v. Anthony, Gibbs, Sage, 501 So.2d 416, 419 (Miss.1987). In Cherry, the two plaintiffs testified that they had read the entire policy. This Court held that even if they had not read the entire policy, knowledge of its contents would be imputed to them as a matter of law. Id. (citing Atlas Roofing Mfg. Co. v. Robinson & Julienne, Inc. 279 So.2d 625, 629 (Miss.1973); Zepponi v. Home Ins. Co., 248 Miss. 828, 833-34, 161 So.2d 524, 526 (1964)). I do not agree with the majority's distinction between "knowledge of the contract terms" and "bound by contract terms." Such phrases are one and the same. Jury instruction D-13 was a correct statement of the law of this state, and it was critically important that the jury be instructed about that point. Without such an instruction, the jury was left to understand that it did not matter what the policy said because Hollins chose not to read it.
*1250 ¶ 78. In conclusion, Hollins's claims for benefits were excluded from coverage under the subject hospital indemnity policy because the condition which formed the basis for her claim preexisted the effective date of coverage. Further, Hollins's fraud claim fails because she did not establish by clear and convincing evidence all of the elements prescribed by Mississippi law to prove fraud. Moreover, Hollins's failed to establish by a preponderance of the evidence that agent Jones was acting under actual or apparent authority when he made the alleged misrepresentation to Hollins. Also, the punitive damages instruction was not supported by the evidence. AILIC had an arguable or legitimate basis for denying the claim and did not act with malice, gross negligence, or reckless disregard for Hollins's rights in denying the claim. Moreover, assuming that punitive damages should have been granted, the award of punitive damages was excessive. The trial court also erred in failing to grant AILIC's instruction D-13. The case should be reversed and remanded to the circuit court.
¶ 79. For the foregoing reasons, I respectfully dissent.
WALLER, COBB AND CARLSON, JJ., JOIN THIS OPINION.
NOTES
[1] See Nichols v. Shelter Life Ins. Co., 923 F.2d 1158 (5th Cir.1991) (cancerous tumor not excluded from coverage by preexisting condition clause in policy where agent acting within apparent authority told insured it would be covered by the policy); Dixie Ins. Co. v. Mooneyhan, 684 So.2d 574 (Miss.1996) (agent acting within apparent authority bound insurer to coverage for commercial vehicle when insurer was only authorized to issue personal coverage); Andrew Jackson Life Ins. Co. v. Williams, 566 So.2d 1172 (Miss.1990) (agent acting within apparent authority bound insurer to begin coverage immediately when policy specifically stated that coverage would not begin until the policy has been delivered); Malta Life Ins. Co. v. Estate of Washington, 552 So.2d 827 (Miss.1989) (agent acting within apparent authority bound insurer to issue policy in excess of the maximum amount listed in policy);
[2] State Farm Mut. Auto. Ins. Co. v. Grimes, 722 So.2d 637 (Miss.1998) (upholding punitive damage award of $1,250,000 when the compensatory award was $1,900, in spite of the insurer's arguable basis for denying the claim); Independent Life & Acc. Ins. Co. v. Peavy, 528 So.2d 1112 (Miss.1988) (affirming punitive damages of $250,000 when the compensatory damages were $412.20 because insurer's agent induced the insured to refrain from timely filing a claim); Nat'l Life & Acc. Ins. Co. v. Miller, 484 So.2d 329 (Miss.1985) (upholding punitive award of $350,000 and actual damages of $2,500, where agent did not disclose on policy application information given to him by insured).
[3] Bankers Life & Cas. Co. v. Crenshaw, 483 So.2d 254, 278 (Miss.1986) aff'd, 486 U.S. 71, 108 S.Ct. 1645, 100 L.Ed.2d 62 (1988)(citing Commodore Corp. v. Bailey, 393 So.2d 467, 471 (Miss.1981); Collins v. Black, 380 So.2d 241, 244 (Miss.1980); Sandifer Oil Co. v. Dew, 220 Miss. 609, 71 So.2d 752 (1954); Teche Lines, Inc. v. Pope, 175 Miss. 393, 166 So. 539 (1936)).